**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Freddie Lee RENNER, Defendant-
Appellant.**

**No. 73-1847.**

United States Court of Appeals,
Sixth Circuit.

Argued April 2, 1974.

Decided May 29, 1974.

William Gary Crabtree, London, Ky. (Court-appointed), on brief, for defendant-appellant.

James F. Cook, Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, U. S. Atty., Robert M. Murphy Asst. U. S. Atty., Lexington, Ky., on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and WALINSKI,* District Judge.

WEICK, Circuit Judge.

Appellant Renner was charged in a 37-count indictment with the offenses of making false and fictitious statements to the effect that he was not under indictment for a state court felony charge, in connection with his acquisition of firearms, and with the offenses of knowingly receiving and possessing firearms when he knew he was under such indictment for a felony, all in violation of 18 U.S.C. §§ 922(a)(6) and 922(h)(1). The false statements charges were contained in the odd-numbered counts of the indictment, and the receipt and possession charges were contained in the even-numbered counts, all of which even-numbered counts incorporated by reference part of the first count which alleged that at all times mentioned therein Renner was under indictment for a felony, in the Circuit Court in Kentucky, "and knew at all these alleged dates that he was so indicted."

The case was tried before a jury which acquitted Renner on each of the nineteen odd-numbered counts which charged him with knowingly making false and fictitious statements. The jury found Renner guilty on each of the eighteen even-numbered counts which charged him with receiving and possessing the firearms when he was under indictment on the state felony charge.

The trial judge had charged the jury that knowledge was relevant only to the odd-numbered counts, and that lack of knowledge that he was under indictment was no defense to the even-numbered

---

* The Honorable Nicholas J. Walinski, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

counts. The court instructed the jury to disregard as surplusage the allegations in the indictment that Renner knew at all times that he was under indictment on the state felony charge. These instructions left Renner with no defense to the even-numbered counts in the indictment since he admitted receipt and possession of the firearms and admitted that the firearms had previously been transported in interstate commerce.

Renner was sentenced to two years' imprisonment and upon expiration of his sentence to five additional years' probation.

Renner, in his appeal, complains only that the trial court erred in instructing the jury that lack of knowledge that he was under indictment at the time he received the firearms was not a defense to an alleged violation of 18 U.S.C. § 922(h)(1). We are of the opinion that such an instruction was erroneous. We reverse.

The facts in this case are neither complex nor controverted. Renner was a man twenty-eight years of age, married, with a five-year-old son. He had an eighth grade education. On December 17, 1968, Renner was indicted by a grand jury of the Rockcastle Circuit Court, Mount Vernon, Kentucky, for armed assault with intent to rob, in violation of K.R.S. 433.150. Said offense is punishable by a prison term in excess of one year. Renner was arrested on December 28, 1968, spent the night in jail, and was released on bond the next morning, having been ordered to appear in Rockcastle Circuit Court on March 19, 1969.

Renner appeared for his trial without counsel. He testified as to what took place in the Rockcastle Circuit Court, as follows:

Q. What happened on that date, that is, March 19, 1969 in the Rockcastle County Circuit Court?

A. Well, Mr. Marler [the prosecuting witness] told me he was going to drop the charges on me, so we went back in that little room and talked to them, and the Judge called me up there and give my money back and I walked out of the courtroom. I thought it was thrown out of court.

Q. Now, that's Judge Hale?

A. Yes.

Q. And Judge Hale returned the money that was taken from you when you were put in jail?

A. Yes, sir.

Q. Were you told by the Court to appear again at any time?

A. No, sir.

Q. Did you hear the Commonwealth's Attorney, or the Court, read or state that the indictment was to be filed away with leave to reinstate on recommendation of the prosecuting witness?

A. No, sir, they didn't explain nothin' to me.

Q. And what you're telling the jury is you thought that the case had been—I mean, the indictment had been dismissed?

A. Yes, sir. (App. 14–15)

The Circuit Court, however, entered the following order:

On motion of Commonwealth Attorney, this indictment filed with leave to reinstate on recommendation of prosecuting witness.

There was no proof that Renner had knowledge of this order, or what it meant. When he left the courtroom he was no longer under bond. As a matter of fact no action was subsequently taken under the state court indictment except to formally dismiss it more than three years later.

Renner admitted purchasing twenty-two firearms (handguns) from two duly registered firearm dealers in February and March 1972. For each purchase Renner signed the required Treasury Department Form 4473. Renner admitted that during each purchase the dealer read to him the question on the form: "Are you under indictment in any court for a crime punishable by imprisonment

for a term exceeding one year," from Form 4473, and that he answered, "No."

Renner further testified that had he known that he was under indictment, he would not have purchased the firearms. Except for the claim that Renner was under indictment at the time, his purchases of the handguns were entirely lawful.

At the trial Renner's defense to all of the thirty-seven charges in the indictment was that he understood that the 1968 Kentucky indictment "was dropped" when he made an appearance in the Rockcastle Circuit Court on March 19, 1969.

The trial court instructed the jury that lack of knowledge that the Kentucky indictment was still pending was a defense to the nineteen odd-numbered counts charging a violation of 18 U.S.C. § 922(a)(6). The jury, when it acquitted Renner on all eighteen counts, obviously believed the testimony of Renner that he did not know that the indictment was still pending when he acquired the firearms.

As to the § 922(h)(1) violations, the Court instructed the jury:

> However, as to Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34 and 36, the even numbered counts, knowledge is not an element of the offense, and the fact that the defendant may have had a good faith belief that the indictment against him had been dismissed by virtue of the act of filing it away, nevertheless, mistake or lack of knowledge, if any, on his part that the indictment was still outstanding would not constitute a defense as to the offenses charged in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34 and 36, the even numbered counts of the indictment.

> You are further instructed that as to the offenses charged in Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26,

28, 30, 32, 34 and 36, the even numbered counts of the indictment, that as said offenses do not involve specific intent, the work [sic] "knowingly" used in said counts of the indictment, that is, the even numbered counts of the indictment, is surplusage, and is not to be considered by you for any purpose in arriving at a verdict as to said counts of the indictment.

This instruction effectually pulled the rug out from under Renner's defense, and he was left without any defense. The jury had no alternative under the court's instructions but to find Renner guilty of the § 922(h)(1) violations.

The question to be determined on this appeal is whether *scienter*[1] is an element of the offense stated in 18 U.S.C. § 922(h)(1) with respect to that part of the statute reading "person under indictment."

The Act itself does not specifically require knowledge that an indictment is pending. If such a requirement is to be imposed it must be based on the long-established requirement of criminal responsibility, namely, *mens rea*. Morissette v. United States, 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

We must also consider the decision of the Supreme Court in United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), in which it was stated that the number of exceptions to the general rule that one must have *mens rea* to be convicted of a crime has increased over the years. 401 U.S. at 607.

In *Freed* the defendant was charged with violating 26 U.S.C. § 5861(d), which makes it unlawful for one to receive or possess a firearm which is not registered to him. The defendant asserted as a defense that he did not know the hand grenades which he had received were not registered. 26 U.S.C. § 5861(d) does not require specific intent or knowledge that the firearms were unregistered. In deciding the validity of

---

1. *"Scienter"* and *"mens rea"* are used interchangeably throughout this opinion. *See*

United States v. Morissette, 342 U.S. 246, 252, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

the asserted defense the Court made a comprehensive review of the knowledge requirement for criminal conduct.

The Court compared the *mens rea* requirements of various crimes referred to in the previous decisions of *Morissette, supra,* Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), and United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). In *Morissette* the Court held *mens rea* was an element of the crime of conversion of property of the United States in violation of 18 U.S.C. § 641 even though said section made no mention of such a requirement. A similar result was reached in *Lambert,* dealing with an ordinance of Los Angeles requiring convicted felons to register with the police department after remaining in the city for five days. Again a knowledge requirement was imposed by the Court even though not mentioned in the law.

In *Dotterweich* a conviction under the Food and Drug Act was upheld wherein a corporate officer was penalized when the firm shipped adulterated and misbranded drugs. Knowledge was held not to be required and the conviction was allowed to stand even though there was no "consciousness of wrongdoing." This is the general rule with respect to pure food laws. 35 Am.Jur.2d, Food, § 77 p. 864 (1967).

The Court in *Freed* held that knowledge as to the unregistered status of hand grenades received or possessed was not required for a conviction under the statute. The Court was of the view that the facts of the case were closer to *Dotterweich* than *Morissette* or *Lambert* because the violation in *Freed* concerned "a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act." 401 U.S. at 609. In a footnote to that statement the Court stated:

We need not decide whether a criminal conspiracy to do an act "innocent in itself" and not known by the alleged conspirators to be prohibited must be actuated by some corrupt motive other than the intention to do the act which is prohibited and which is the object of the conspiracy. An agreement to acquire hand grenades is hardly an agreement innocent in itself. Therefore what we have said of the substantive offense satisfies on these special facts the requirements for a conspiracy. Cf. United States v. Mack, 2 Cir., 112 F.2d 290.

In a concurring opinion Justice Brennan noted that while a defendant under this statute need not have knowledge that the firearm is unregistered, he must, however, have knowledge that the object possessed is a firearm and must also knowingly receive or possess the object. "[T]he National Firearms Act does not create a crime of strict liability as to all its elements." *Id.* at 612.

If an item consists of highly dangerous materials, such as a hand grenade, a person reasonably knows that the item cannot be lawfully purchased or received without complying with strict governmental procedures designed to secure close supervision of such dangerous item. Thus, adulterated and misbranded drugs (*Dotterweich, supra*), narcotics (United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)), and hand grenades (*Freed, supra*) have been designated as such items, and a violation of regulatory measures dealing with said items may occur without the violator having *mens rea* as to every element of the crimes delineated in said regulatory measures.

We do not question the legitimacy of the classification of "persons under indictment" being prohibited from purchasing firearms, even though an indictment is merely an accusation. This Court has previously delineated a nexus between such a classification as set forth in 18 U.S.C. § 922(h)(1) and a propensity for violence. United States v. Craven, 478 F.2d 1329 (6th Cir. 1973).

Nor do we question the legitimacy of the basis upon which Congress predicated this Act. Tighter controls on the interstate transportation of instrumentalities of violence were needed. *See* H.R. Rep. No. 1577, 90th Cong., 2d Sess. (1968).

■ We are specifically addressing our attention to the *mens rea* requirement in criminal prosecutions with respect to the special circumstances of the classification "persons under indictment for a crime punishable by imprisonment for a term exceeding one year."

In our opinion, in order to convict a person of an offense where being under indictment is an element, it must be shown that the accused had knowledge of the indictment; without such a showing a serious question of due process would be involved.

The principles stated in *Morissette* with regard to *mens rea* are applicable to the present action. We are of the opinion that such an application of *mens rea* principles is consistent with *Freed*, for the Court in *Freed* specifically stated that knowledge that hand grenades were unregistered was not required because the act, namely, the possessing of hand grenades, was not innocent in itself. Thus, *Freed* did not prescribe a broad rule that specific intent or knowledge is not an element of the crime in prosecutions for illegal possession of firearms.

■ As well stated in Justice Brennan's concurring opinion in *Freed*:

Following the analysis of the Model Penal Code, I think we must recognize, first, that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Dennis v. United States, 341 U.S. 494, 500 [71 S.Ct. 857, 862, 95 L.Ed. 1137] (1951) (Vinson, C. J., announcing judgment); Smith v. California, 361 U.S. 147, 150 [80 S.Ct. 215, 217, 4 L.Ed.2d 205] (1959); second, that *mens rea* is not a unitary concept, but may vary as to each element of a crime; and third, that Anglo-American law has developed several identifiable and analytically distinct levels of intent, *e. g.*, negligence, recklessness, knowledge, and purpose. To determine the mental element required for conviction, each material element of the offense must be examined and the determination made what level of intent Congress intended the Government to prove, taking into account constitutional considerations, see Screws v. United States, 325 U.S. 91, [65 S.Ct. 1031, 89 L.Ed. 1495] (1945), as well as the common-law background, if any, of the crime involved. See Morissette v. United States, 342 U.S. 246 [72 S.Ct. 240, 96 L.Ed. 288] (1952). (Footnotes omitted.) (401 U.S. at 613–614.)

By reason of the special circumstances that may surround one under indictment, *i. e.*, he may not be aware of the fact that he has been indicted because of failure to serve him on a secret indictment, or where, as here, the accused had been advised in court that the indictment was dropped, and he did not know that it had been "filed away with leave to reinstate at the recommendation of the prosecuting witness,"[2] in our opin-

---

2. The Court of Appeals of Kentucky in VanArsdale v. Caswell, (Ky.) 311 S.W.2d 404 (1958), discussed the practice of "filing away an indictment or warrant." It is like an indefinite continuance, and is never reinstated without notice to the accused. He can appeal from such an order; it cannot be entered without the consent of the accused. There was no proof here that the accused consented because he did not even know about it.

The Kentucky Court stated that ordinarily the defendant does not object to such an order because ". . . from a practical standpoint it usually means the end of the prosecution." It was the end here.

In an amicus brief filed by the Louisville Police Officers Association in *VanArsdale*, the Association vigorously argued that "trial courts are justified in 'filing away' a warrant or indictment as it protects citizens and police officers from suits for malicious prosecution, since such an order indefinitely continues the case and prevents a final determination thereof." *(Id.* at 407).

ion knowledge that he is still under indictment is a relevant factor.

The indictment in the present case pleaded knowledge. Such an allegation ought not to have been stricken as surplusage. Whether Renner knew that he was under indictment was a question for the jury to decide in its determination of Renner's guilt or innocence. *Morissette, supra,* at 274. The jury did consider this question with regard to the alleged violations of § 922(a)(6) and found Renner not guilty because he made no false and fictitious statements.

As to the alleged violations of § 922(h)(1), in which the jury was instructed not to consider Renner's knowledge of the indictment, Renner was found guilty. Such instruction was error. The jury should have been instructed to consider Renner's knowledge of the indictment as an element of the alleged § 922(h)(1) violations.

The judgment of conviction is reversed.