**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Demetris HOLLOWAY,
Defendant-Appellant.**

**No. 83–1422.**

United States Court of Appeals,
Sixth Circuit.

Argued April 19, 1984.

Decided Sept. 24, 1984.

Rehearing and Rehearing En Banc
Denied Nov. 12, 1984.

John R. Minock, argued, Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Michael J. Lavoie, Asst. U.S. Atty., argued, Detroit, Mich., for plaintiff-appellee.

Before MERRITT and KRUPANSKY, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

On December 6, 1981, defendant-appellant Demetris Holloway, an inmate at the Milan Federal Correctional Institute in Michigan, was subjected to a pat-down search by a guard as he passed through a checkpoint in the prison. During the search, the guard discovered a bulge in Holloway's jacket pocket; Holloway told

the guard that it was coffee. When the guard insisted on seeing it, Holloway ran but was caught by the guard and two other prison employees and searched. Holloway initially resisted the search and attempted to swallow two balloons containing a white substance later determined to be heroin. Two plastic bags containing marijuana were also taken from Holloway during this search. A second search was conducted soon afterwards, and an additional packet of heroin was discovered in Holloway's clothing. Holloway was charged with possession of heroin in violation of 21 U.S.C. § 844(a).[1]

At trial, Holloway's defense centered on his contention that he had found the drugs during the course of his duties as a janitor and intended to turn them over to the warden to get preferential treatment. The testimony of several witnesses called on Holloway's behalf corroborated his story. The district court instructed the jury that the elements of the crime were: (1) that the defendant possessed heroin, and (2) that the defendant did so knowingly and unlawfully.

After about an hour and a half of deliberation, the jury presented a question to the court regarding an instruction which required that the jury find that the defendant possessed the drug knowingly and unlawfully. The jury asked: "If the intent was to turn the drug in and we believe that, is that unlawful possession?" Over defense counsel's objection, the court instructed the jury, in substance, that only law enforcement personnel, persons authorized by such personnel or persons authorized by the Attorney General could legally possess heroin. The jury found Holloway guilty after another hour of deliberation.

The narrow question on appeal is whether the district court committed reversible error in issuing its supplemental instruction in response to the jury's question concerning Holloway's alleged intent to turn the heroin over to the warden.

Holloway argues that in this context the instruction in effect directed a guilty verdict and that it improperly removed any mens rea requirement from the elements of the crime; that while the statute expressly limits lawful possession to the persons delineated in the supplemental charge, an additional element of felonious intent must be implied.[2] The government argues that the district court did not err because section 844(a) does not require felonious intent. The only mental state required by the provision, the government maintains, is knowledge that the substance in possession is a controlled substance.

Although we recognize that "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American jurisprudence," *United States v. Freed*, 401 U.S. 601, 613, 91 S.Ct. 1112, 1120, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring) (quoting *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951)), we hold that felonious intent is not an element of a violation of 21 U.S.C. § 844(a).

*Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), is the seminal case on the requirement of felonious intent as an element of a statutory crime. Morissette openly took bomb casings from an Air Force bombing range and sold them as scrap metal. He contended

---

1. The section reads in pertinent part:
   It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter II of this chapter.

2. Holloway does not contend (and is correct in not contending) that due process requires that felonious intent be an element of the crime. *See, e.g., United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *Wright v. Edwards*, 470 F.2d 980 (5th Cir.1972). This case therefore involves only a question of statutory construction.

In his brief on appeal, Holloway appears to argue that, in possessing the heroin, he was acting as agent of those authorized by statute. There was no proof or even a contention to such effect at trial.

that he took the casings in the belief that they were abandoned, and that he had no criminal intent in taking them. The district court ruled at trial that such intent was not an ingredient of the crime charged. He was convicted of violating 18 U.S.C. § 641, which provides that "[w]hoever embezzles, steals, purloins, or knowingly converts" government property is subject to fine and imprisonment. On appeal, the Supreme Court reversed, ruling that a conviction under 18 U.S.C. § 641 required a showing of "felonious intent" because the offense with which Morissette was charged was taken over from the common law offense of larceny and carried with it an implied element of felonious intent.

The *Morissette* Court was quick to indicate, however, that many statutory crimes are not derived from the common law. *Id.* at 253, 72 S.Ct. at 244. The Court recognized that "a century-old but accelerating tendency" exists both here and in England "to call into existence new duties and crimes which disregard any ingredient of intent." *Id.* These new "public welfare offenses ... do not fit neatly into ... accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals." *Id.* at 255, 72 S.Ct. at 246. Rather, the public welfare statutes are designed to "heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare." *Id.* at 254, 72 S.Ct. at 245. The Court commented upon public welfare offenses as follows:

> While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order

as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. *Id.* at 256, 72 S.Ct. at 246.

■ We find that section 844(a) is not codified from the common law and so does not carry with it an element of criminal intent. Section 844(a) is a public welfare statute designed to curb drug use and addiction.[3] In 21 U.S.C. § 801(2), Congress provided that: "[t]he illegal importation, manufacture, distribution, and *possession* and improper use of controlled substances have a substantial and detrimental effect on the *health and general welfare* of the American people." (emphasis supplied). The Supreme Court has held that statutes regulating the handling of drugs do not require felonious intent. *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *United States v. Behrman,* 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922); *United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922).

In *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), the Court likened the possession of narcotics to the unauthorized possession of explosives. In *Freed,* the defendants were indicted for possession of an conspiracy to possess unregistered hand grenades in violation of various sections of the National Firearms Act. The district court granted the defendants' motion to dismiss on the ground that, *inter alia,* the indictment did not allege scienter. The Supreme Court reversed, holding that 26 U.S.C. § 5861(d) of the Act, which makes it unlawful for any person "to receive or possess a firearm which is not

---

**3.** Section 844(a) is part of the Comprehensive Drug Abuse Prevention Control Act of 1970. The principal purpose of the bill is as follows:
> This legislation is designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States (1) through providing authority for increased efforts in drug abuse prevention and rehabilitation of users, (2) through providing more effective

means for law enforcement aspects of drug abuse prevention and control, and (3) by providing for an overall balanced scheme of criminal penalties for offenses involving drugs.

H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 4566, 4567.

registered to him" required no specific intent or knowledge that the hand grenades were unregistered. The Court followed *Balint* and quoted extensively from that opinion. The *Freed* Court found that the firearm statute:

is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act. They are highly dangerous offensive weapons, no less dangerous than the narcotics involved in United States v. Balint, where a defendant was convicted of sale of narcotics against his claim that he did not know the drugs were covered by the federal act.

*Id.* at 609, 91 S.Ct. at 1118 (footnotes and citations omitted).

In *United States v. Renner*, 496 F.2d 922 (6th Cir.1974), this Circuit found that an element of mens rea should be implied in certain statutory crimes. In *Renner*, the defendant was charged with making false statements in connection with the purchase of a firearm to the effect that he was not under indictment on a state felony charge in violation of 18 U.S.C. § 922(a)(6), and with receiving firearms while under indictment on a state felony charge in violation of 18 U.S.C. § 922(h)(1). The defendant had been indicted in a state court for assault with intent to rob, but when he appeared for trial, the prosecuting witness decided to drop the charges. Defendant's bond money was returned to him and, he testified in federal court, he thought that the indictment was dismissed. In fact, however, the indictment was filed with leave to reinstate on recommendation of the prosecuting witness and not formally dismissed until more than three years later. During the time that the indictment was pending, the defendant purchased twenty-two firearms from registered dealers. He admitted that the dealers asked him, in accordance with Treasury Department regulations, whether he was under indictment

for a felony. He answered in the negative. He testified that had he known that he was under indictment, he would not have purchased the firearms. His defense at trial was that he did not know of the indictment. The trial judge instructed the jury that lack of knowledge of the pending indictment was a defense to the charges of making false statements, but was not a defense to charges of receiving a firearm while under indictment. Defendant was found not guilty of making false statements but was found guilty of receiving firearms while under indictment.

On appeal, this court found that the trial court's instruction "effectually pulled the rug out from under" the defendant's defense. *Id.* at 924. In considering whether what it termed as "scienter" or "mens rea" was an element of a violation of section 922(h)(1), the court recognized that the Act itself did not require knowledge that an indictment was pending. The court, citing *Morissette*, found that "[i]f such a requirement is to be imposed it must be based on the long-established requirement of criminal responsibility, namely, *mens rea*." *Id.* at 924. The court, however, noted the *Freed* decision and the Supreme Court's statement therein that the number of exceptions to the rule that mens rea is an element of all crimes has increased over the years. In a narrow holding, the court ruled that in order to convict a person of an offense an element of which is being under indictment, it must be established that the accused knew of the indictment.[4] The court held that "without such a showing a serious question of due process would be involved." *Id.* at 926. The court found that such a holding was consistent with *Freed* because the Supreme Court in *Freed* stated only that knowledge that hand grenades were not registered was not an element of the offense because the act of possessing hand grenades was not innocent in itself.

If an item consists of highly dangerous materials, such as a hand grenade, a

---

**4.** This court has held that *Renner* should be limited to its facts. *United States v. Barrett*, 504

F.2d 629, 634 (6th Cir.1974), *aff'd*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976).

person reasonably knows that the item cannot be lawfully purchased or received without complying with strict governmental procedures designed to secure close supervision of such dangerous item. Thus, adulterated and misbranded drugs, narcotics, and hand grenades have been designated as such items, and a violation of regulatory measures dealing with said items may occur without the violator having *mens rea* as to every element of the crimes delineated in said regulatory measures.

*United States v. Renner*, 496 F.2d 922, 925 (6th Cir.1974) (citations omitted).

Another factor that convinces us that section 844(a) is a regulatory measure that includes no requirement of felonious intent is the fact that the offense is classified as a misdemeanor.[5] According to the *Morissette* Court, one of the hallmarks of a public welfare offense is the fact that "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." 342 U.S. at 256, 72 S.Ct. at 246. The Supreme Court has upheld other regulatory measures that imposed penalties more stringent than that set forth in section 844(a). *See, e.g., United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 128 L.Ed.2d 356 (1971) (26 U.S.C. § 5861(d), possession of unregistered firearm, $10,000 or ten years imprisonment or both); *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) (Narcotic Act of 1914, ch. 1, 38 Stat. 785(2), unlawful narcotics sale; five years imprisonment).[6]

This court is, however, mindful of the fact that the principle stated today may result in some well-meaning individuals being held to be in violation of 21 U.S.C. § 844(a). As Holloway points out in his brief, a teacher who found heroin in a school lavatory, knew the substance was heroin, and picked it up to take to the principal's office would be guilty of a violation of section 844(a). So, for that matter, would be the principal to whom the teacher handed the substance, assuming the principal knew that it was heroin. Similarly, a parent who finds marijuana in his child's room, knows that the substance is marijuana, and confiscates it with the intention of disposing of it or of handing it over to the proper authorities would be in violation of section 844(a).[7] As stated by the Court in *Dotterweich:*

> In such matters the good sense of prosecutors, the wise guidance of trial judges, and the ultimate judgment of juries must be trusted. Our system of criminal justice necessarily depends on "conscience and circumspection in prosecuting officers," even when the consequences are far more drastic than they are under the provision of law before us.

*United States v. Dotterweich*, 320 U.S. 277, 285, 64 S.Ct. 134, 138, 88 L.Ed. 48 (1943) (citations omitted). Numerous other similar situations can easily be imagined. This court expressed such concerns in *United States v. Brandt*, 717 F.2d 955 (6th Cir.1983) (holding that scienter was not an element of the offense of hunting birds in a baited area). The court remarked that "[a] subjectively 'innocent' person can unwittingly run afoul of the regulation. However, this is inherent in all so called 'public welfare offenses' wherein scienter is not an element of the offense and these types of offenses have long been sanctioned by the courts." *Id.* at 958 (footnote omitted).

Similarly, in *United States v. Flum*, 518 F.2d 39 (8th Cir.1975), the defendant was

---

5. "Possession of controlled drugs is made a misdemeanor, except where the possession is for the purpose of distribution to others." H.R.Rep. No. 91-1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 4566, 4570. The maximum penalty imposed on a first offender by § 844(a) is imprisonment for a term of one year or a fine of not more than $5,000, or both. Appellant was sentenced to six months imprisonment to run consecutively to the sentence now being served.

6. We note that appellant is currently incarcerated at Milan Federal Correctional Institute following his conviction for theft of tires from an interstate shipment, a felony under 18 U.S.C. § 659.

7. One can easily conceive of hard cases where felonious intent *is* required, *e.g.*, the poor widow who steals food for her starving baby.

convicted of attempting to board an aircraft while having with him concealed knives. The majority found that intent to conceal was not an essential element of the crime. Judge Heaney, writing in dissent, noted that the majority's position

> permits the imposition of criminal liability upon the housewife who carries scissors in her sewing bag; the fisherman who carries a scaling knife in his tackle box; the professional who carries a letter opener in his briefcase; the doctor who carries scalpels in his medical bag; and the tradesman who carries a hammer in his tool kit.

*Id.* at 48.

Since the legislative history of 21 U.S.C. § 844(a) is silent on the issue of felonious intent, *see* H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 4566, we are reluctant to imply such an element in what clearly is a measure designed to protect the public health and welfare. The Court noted in *Morissette* that:

> Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act.

342 U.S. 262, 72 S.Ct. at 249. We find that section 844(a) dictates that a person who knowingly possesses a controlled substance who is not so authorized does so at his own peril.

■ In sum, the court concludes that a "guilty mind" is not an element of a section 844(a) violation. Irrespective of what Holloway's intentions were regarding the ultimate disposition of the heroin, he knew the illicit nature of the substance he possessed and he purposely possessed said substance. Holloway was not one of those persons who legally could possess heroin according to the statute. The district court's instructions, therefore, were not erroneous.

Holloway, acting *pro se*, also filed an additional brief contending that, if he did not prevail on this appeal, his appointed counsel was guilty of ineffective assistance in not defending the case on the theory that Holloway did not know that what he possessed was heroin. Since this contention has not been made in the district court, it cannot be entertained on this appeal.

The judgment of conviction is AFFIRMED.