106 F.3d 402
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael TOMLIN, Petitioner-Appellant,
v.
Carl ANDERSON, Warden, Respondent-Appellee.
 No. 95-3385.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1997.
 
 Before: CONTIE, NELSON, and BATCHELDER, Circuit Judges.
 BATCHELDER, Circuit Judge.
 
 
 1
 Habeas petitioner Michael Tomlin appeals from the decision of a federal habeas court rejecting the grounds he advanced for relief from his state conviction and sentence. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 On February 6, 1990, petitioner Michael L. Tomlin, was arrested at his home after his son reported that Tomlin was firing a weapon and threatening him.[1] When police attempted to arrest Tomlin, he resisted. One of the officers on the scene described him as showing a number of signs of intoxication, including watery eyes, slurred speech, slow mental faculties, and a wobbly stance. The officer also explained that Tomlin smelled of alcohol and needed help in order to walk.
 
 
 3
 During Tomlin's arrest, police discovered on his person an unloaded nine-millimeter German Luger handgun. They also discovered four bullets for the handgun in one of Tomlin's pockets. When police inspected Tomlin's home, they found several rifles and a pistol. They also noticed in the walls of the home at least two bullet holes containing used bullet casings.
 
 
 4
 On February 27, 1990, Tomlin was indicted for possessing a weapon while under a disability, OHIO REV.CODE ANN. § 2923.13(A)(4) (Anderson 1993) (hereinafter "the statute," "O.R.C. § 2923.13(A)(4)," or " § 2923.13(A)(4)") with a firearm specification, O.R.C. § 2929.71, as well as a prior conviction for a violent offense specification. O.R.C. § 2941.143.
 
 
 5
 At trial, Detective Joseph Monia, one of the officers who searched Tomlin's home, testified about the basis for the prior conviction for a violent offense specification. On June 24, 1978, Monia had been dispatched to Tomlin's home, where he found Tomlin drunk and armed with a submachine gun. As a result of this incident, Tomlin was charged with and convicted of assault.
 
 
 6
 The trial evidence established Tomlin's prior abuse of alcohol and a number of criminal offenses (including drunk driving) committed while Tomlin was intoxicated. Specifically, the evidence revealed that in addition to the June 1978 incident, police had also found Tomlin drunk and with a gun on June 7, 1982, and that on December 8, and 9, 1989, Tomlin had been charged with driving under the influence of alcohol. Further, a representative of Tomlin's employer, Ford Motor Company, testified that between September 1977 and October 1986, Tomlin had taken seven alcohol-related leaves of absence from his employment.
 
 
 7
 The State provided evidence that Tomlin was a chronic alcoholic through the testimony of a clinical psychologist, Thomas Haglund, who defined an alcoholic as "an individual who drinks habitually in spite of [the] problems that that drinking creates, either medical, social, or psychologica[l]." Haglund testified that, in addition to the above symptoms, a chronic alcoholic shows symptoms of "a long pattern of drinking[,] generally over the years."
 
 
 8
 Haglund testified that chronic alcoholism, though treatable, cannot be cured. When presented with a hypothetical (which depicted Tomlin's alcohol-related work and criminal history), he explained that he would consider such an individual to be a "chronic alcoholic." As Haglund put it:
 
 
 9
 I count six previous treatments for alcohol rehabilitation, two DWI's and four alcohol related domestic situations involving firearms, one or two of them involving firearms, and police intervention and, you know, those are extremely strong clues.
 
 
 10
 They scream at you and I can't come to any other conclusion than [that] this man has a serious problem with alcohol.
 
 
 11
 On October 24, 1990, the trial court convicted Tomlin on the charges contained in the indictment, including the firearm and prior violent offense specifications. The state court of appeals affirmed, overruling all of Tomlin's exceptions to the trial court proceedings. The Ohio Supreme Court denied leave to appeal. The state court of appeals subsequently certified the record to the Ohio Supreme Court because of a conflict among the state's courts of appeals in regard to the use of expert testimony to establish chronic alcoholism. The Ohio Supreme Court then reviewed this issue, ruling in State v. Tomlin, 590 N.E.2d 1253 (Ohio 1992), that chronic alcoholism could be established by expert medical testimony, but that such testimony was not required in order to prove chronic alcoholism. Id. at 1254-56. Tomlin's conviction was affirmed.
 
 
 12
 After the Ohio Supreme Court affirmed the court of appeals, Tomlin filed a petition for habeas corpus in federal district court pursuant to 29 U.S.C. § 2254, seeking relief from his state court conviction on two grounds: First, the statute under which he was convicted was, as applied, unconstitutionally vague; and second, his sentence violated the Eighth Amendment because it was grossly disproportionate to the offense.
 
 
 13
 The State responded to Tomlin's habeas petition by claiming that Tomlin had waived the two grounds for relief contained in the petition by failing to present them in the state courts. The district court agreed with the State as to Tomlin's Eighth Amendment claim, but found that Tomlin had properly raised the due process challenge to the statute in the state courts.[2] Nevertheless, the district court rejected Tomlin's due process argument. It is the judgment of the district court from which Tomlin now timely appeals.
 
 
 14
 II. Tomlin's Eighth Amendment Argument.
 
 
 15
 As in the district court, Tomlin argues that because his sentence is disproportionate to the gravity of his offense, it violates the Eighth Amendment. The State responds, as it did below, by asserting that Tomlin forfeited this argument as a collateral attack on his sentence by failing ever to raise it in state court. 28 U.S.C. § 2254(b), (c); Anderson v. Harless, 459 U.S. 4, 7 (1982).
 
 
 16
 Tomlin's failure to raise timely his Eighth Amendment claim on direct appeal prevents him from seeking post-conviction relief in state court. Ohio courts will not consider a constitutional claim such as his in a post-conviction proceeding when the claim was not timely raised at the earliest possible time on direct appeal. See Rust v. Zent, 17 F.3d 155, 160 (6th Cir.1994) (citing State v. Roberts, 437 N.E.2d 598, 601 (Ohio 1982)). Thus, as the district court correctly observed, no state forum will consider his claim. We conclude, then, that Tomlin has exhausted the remedies available in the courts of Ohio, 28 U.S.C. § 2254(b), and that Tomlin has no "right under the law of [Ohio] to raise" his Eighth Amendment claim. 28 U.S.C. § 2254(c).
 
 
 17
 The rule announced in Roberts, supra, constitutes a state-created procedural bar to having the merits of his claim heard. This bar not only prevents Tomlin from obtaining post-conviction relief in state court, but also prevents him from obtaining such relief from the federal habeas court unless he can satisfy the "cause and prejudice" standard of Wainwright v. Sykes, 433 U.S. 72, 87 (1977). See Leroy v. Marshall, 757 F.2d 94, 95 & n. 1 (6th Cir.) (explaining that the "cause and prejudice" standard of Wainwright applies to habeas claims which were not raised on direct appeal in the state courts), cert. denied, 474 U.S. 831 (1985).
 
 
 18
 Tomlin attempts to demonstrate "cause" by pointing out that, because he was not incarcerated pursuant to his conviction and sentence until the Ohio Supreme Court decided his appeal, "it would have been procedurally premature for him to raise an Eighth Amendment issue at the state court level." We cannot agree. Tomlin has failed to direct our attention to any authority whatever which would support his theory that Ohio courts would not have entertained an attack on his sentence because he was not incarcerated until after the state Supreme Court decided his appeal. In the absence of such authority, we do not assume that if Tomlin had raised his Eighth Amendment claim, the state courts would have rejected it as premature. Because we believe that Tomlin's asserted reason for not raising his argument in a timely fashion does not justify his failure to do so, we hold that he has not satisfied the "cause" prong of the "cause and prejudice" standard of Wainwright.[3] We therefore AFFIRM this aspect of the district court's judgment.
 
 
 19
 III. Tomlin's Due Process Challenge.
 
 
 20
 Tomlin's habeas petition further claims that his conviction under § 2923.13(A)(4)[4] violates the Due Process Clause of the Fourteenth Amendment because "[t]he statute as applied to petitioner's conviction is unconstitutionally void for vagueness." Although this Ohio statute does not implicate First Amendment rights, neither the magistrate judge nor the district judge explicitly addressed the constitutionality of the statute at hand "as applied;" both framed their analyses primarily in terms of a facial challenge to the statute. While we think that a vagueness challenge to this Ohio statute must be examined in light of the facts of the particular case, since it does not involve First Amendment freedoms, see United States v. Mazurie, 419 U.S. 544 (1975) (holding that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand"); Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 n. 6 (1995) (noting that because the case involved no First Amendment issues, the vagueness challenge to RICO statute was limited to the statute as applied), cert. denied, 116 S.Ct. 1041 (1996); United States v. Avant, 907 F.2d 623, 625 (1990) (holding that vagueness challenge to criminal statute not involving First Amendment rights must be limited to the facts of the case at hand), we conclude that the district court properly held that Tomlin's vagueness challenge to the statute is without merit.
 
 
 21
 Before the district court, Tomlin argued that § 2923.13(A)(4) was impermissibly vague because 1) its use of the term "chronic alcoholic" was undefined and was therefore insufficient to put ordinary persons on notice of what conduct the statute proscribed or what disability the statute included, and 2) the statute failed to provide explicit standards governing its enforcement. On appeal, Tomlin has added an additional argument, perhaps obliquely included in his arguments to the district court,[5] to the effect that the statute's lack of a mens rea requirement renders it unconstitutional. While this is not a vagueness issue, and was not specifically raised by Tomlin in the habeas petition, we will consider it on appeal because it was fully dealt with in the trial court.
 
 
 22
 The magistrate judge concluded that § 2923.13(A)(4) was unconstitutionally vague because it failed both prongs of the Kolender test, which requires that a criminal statute be examined to determine whether it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). In declining to accept the magistrate judge's recommendation, the district judge first reviewed the two-pronged test, and then held that Ohio law requires that where a statute does not contain an explicit definition of words contained within it, the courts are to apply to those words their common, ordinary and accepted meaning in the context in which they are used. See Baker v. Powhatan Mining Co., 67 N.E.2d 714, 715 (Ohio 1946). Accordingly, the district court held, persons of ordinary intelligence should understand that "a person who drinks alcoholic beverages habitually and excessively over a lengthy period of time" is prohibited under the terms of this statute from knowingly acquiring, having, carrying or using any firearm, and this understanding is sufficient to provide both notice to the public and a limiting standard to law enforcement. Furthermore, the district court concluded, neither speculative danger of arbitrary enforcement nor the risk that law enforcement officers might be required to exercise judgment in giving effect to the statute is sufficient to render this statute void for vagueness or violative of due process. See Village of Hoffman Est. v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 503 (1981).
 
 
 23
 Tomlin does not claim that he is not a chronic alcoholic (as, indeed, he would be hard-pressed to do under the facts of this case); neither does he claim that he was subjected to arbitrary action by officials enforcing the statute (again, a difficult claim to make since he was not arrested under the statute at issue). Tomlin does not even claim that he is not able to understand the conduct that is prohibited by this statute. We have reviewed the record carefully, and conclude that Tomlin has wholly failed to demonstrate that, as applied to him, this statute fails to provide fair warning of the conduct prohibited or that it encourages arbitrary and discriminatory enforcement. Tomlin's vagueness challenge must fail.
 
 
 24
 Neither are we persuaded by the magistrate judge's conclusion, premised on his reading of Staples v. United States, 114 S.Ct. 1793 (1994), that § 2923.13(A)(4) is unconstitutional because it contains no explicit scienter requirement for the element of chronic alcoholism and has been interpreted by some Ohio courts as containing no such mens rea requirement. The issue in Staples was whether the statute in question actually was intended by Congress to contain a mens rea requirement, id. at 1796, not whether the statute could be constitutional in the absence of such a requirement. We agree with the district court's conclusion that Staples does not compel the conclusion that § 2923.13(A)(4) be held to be unconstitutional because it does not contain any mens rea requirement. Indeed, the majority opinion in Staples explicitly recognized that certain types of "regulatory" or "public welfare" offenses "serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct--awareness of some wrongdoing." Id. at 1798 (quoting United States v. Dotterweich, 320 U.S. 277, 280-81 (1943)). We think that the regulation achieved through this Ohio statute may be thus categorized. Accordingly, we conclude that § 2923.13(A)(4) is not unconstitutional because it lacks a mens rea requirement.
 
 IV.
 
 25
 In light of the foregoing, we AFFIRM the judgment of the district court.
 
 
 26
 CONTIE, Circuit Judge, dissenting.
 
 
 27
 I dissent. Ohio Rev.Code § 2923.13(A)(4), which makes it a felony for a "chronic alcoholic" to "acquire, have, carry, or use" any firearm, is unconstitutional because it lacks a required mens rea element, it is void for vagueness, and it is overbroad.
 
 
 28
 The statute criminalizes gun possession or use by a "chronic alcoholic," who is a person with a medically recognized disease. Alcoholism is defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV ") as a substance dependence involving "a cluster of cognitive, behavioral, and physiological symptoms indicating that the individual continues use of the substance despite significant substance-related problems."[1] One of the characteristic symptoms of the disease is denial--a refusal to admit the evidence of a drinking problem.[2] This means that Ohio Rev.Code § 2923.13(A)(4) imposes criminal liability on a person, in part, because he has a medically recognized disease, even though a key symptom of this disease is denial or lack of knowledge that one is an alcoholic. It is unconstitutional to impose criminal sanctions on a class of persons who are ignorant of the characteristics that makes their conduct illegal. See Colautti v. Franklin, 439 U.S. 379, 395 (1979); Liparota v. United States, 471 U.S. 419, 426-27 (1985).
 
 
 29
 Moreover, according to DSM-IV, the course of the disease of alcoholism is variable. "Although relatively brief and self-limited episodes may occur (particularly during periods of psychosocial stress), the course is usually chronic, lasting years, with periods of exacerbation and partial or full remission. There may be periods of heavy intake and severe problems, periods of total abstinence, and times of nonproblematic use of the substance, sometimes lasting for months.... [F]ollow-ups reveal that 20% (or more) of individuals with Alcohol Dependence become permanently abstinent." Id. at 189 (emphasis added). Alcoholics in remission are not cured of their predilection for chemical dependency; they are simply recovering alcoholics, who are in the remission stage of a chronic disease. However, according to the Ohio statute, "chronic alcoholics"[3] in remission are prohibited from using or owning guns.
 
 
 30
 Given these characteristics of alcoholism, the Ohio statute, making it a felony for a "chronic alcoholic" to own or use a gun, is unconstitutional for three reasons.[4] First, the statute lacks a necessary mens rea requirement in regard to alcoholism. The statute makes it illegal for someone who has a medically recognized disease to own or use a gun in spite of the fact that a major characteristic of the disease is lack of knowledge that one has the disease. An alcoholic who characteristically denies his disease is not aware that the statute will subject him to criminal liability. For this reason, I believe the statute must have a mens rea requirement in regard to alcoholism. See Liparota, 471 U.S. at 426-27. In other words, the "chronic alcoholic" must know that he is an alcoholic in order to be subject to criminal liability. However, there is nothing in the Ohio statute to require that the perpetrator know the facts that make his conduct illegal.
 
 
 31
 At trial in the present case, the defense expert witness, Dr. Haglund, testified as follows:
 
 
 32
 Denial is a common--it is a keystone symptom of the disease; that is denial, even in the face of overwhelming evidence, in some individuals may also show throughout history of their drinking, a pattern of violent behavior (emphasis added).
 
 
 33
 Defendants, thus, concede that "chronic alcoholics" characteristically may have no actual knowledge of their disease, because they deny it. However, the statute subjects them to criminal liability, in part, because of their alcoholism. Defendants fail to see that for this reason, the statute, which does not require knowledge that one is a "chronic alcoholic," lacks a necessary mens rea requirement.
 
 
 34
 In Staples v. United States, 114 S.Ct. 1793, 1804 (1994), the Supreme Court held that when a statute attempts to transform what would inherently be innocent conduct into criminal conduct, a mens rea requirement is necessary. In the present case, the consumption of alcohol is inherently innocent conduct (if one is over 21 years of age). A characteristic of the disease of alcoholism is denial that one's legal drinking is so excessive that it constitutes substance abuse or chemical dependency. Therefore, according to the Supreme Court opinion in Staples, the Ohio statute must have a mens rea requirement--one must know that one's legal use of alcohol makes one a "chronic alcoholic" subject to criminal liability. The Ohio statute does not have such a requirement and therefore its enforcement suffers from the same deficiencies as the statute in Staples.
 
 
 35
 It is clear that Ohio Rev.Code § 2923.13(A)(4) contains no implicit scienter requirement for the element of[5] "chronic alcoholism," because it has not been interpreted by the Ohio courts to contain such a requirement. The Ohio Court of Appeals, upon direct review of the present case, stated the following:
 
 
 36
 Contrary to Tomlin's assertions, R.C. 2923.13 does not require that a person have knowledge of his disability. Rather, it requires only that the defendant "knowingly acquire, have, carry, or use" a firearm, while the disability existed. Thus, the state of Ohio need not prove a knowledge of the disability as an element of the offense.
 
 
 37
 Thus, according to the Ohio Court of Appeals, a person with a disability is subject to criminal liability, in part, because he has the disability, even if he is unaware of the disability. Under Ohio law, in order to be in violation of the statute, a perpetrator need only be aware that he owns or uses a firearm without regard to whether, at the same time, he knows that he is designated a "chronic alcoholic."
 
 
 38
 Under the Supreme Court's holding in Staples, the enforcement of Ohio Rev.Code § 2923.13(A)(4) against petitioner is invalid because the Ohio courts imposed no knowledge requirement in regard to "chronic alcoholism." See Osborne v. Ohio, 495 U.S. 103 (1990) (statute's failure on its face to provide a mens rea requirement is cured by the Ohio court's conclusion that the State must establish scienter). As the Supreme Court stated in United States v. X-Citement Video, Inc., 115 S.Ct. 464, 465 (1994), there is a "standard presumption [that] a scienter requirement should apply to each of the statutory elements which criminalize otherwise innocent conduct."
 
 
 39
 In Staples, the Supreme Court struck down the enforcement of a federal statute which made it illegal to possess an unregistered firearm that would automatically fire more than one shot, and was, therefore, classified as a "machinegun." 114 S.Ct. at 1794. The Supreme Court determined that the statute, as enforced, lacked a necessary mens rea requirement that the defendant actually be aware that the firearm in question had "machinegun" characteristics. The Supreme Court found that this lack of scienter invalidated the enforcement of the statute, because "the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American jurisprudence." Id. at 1797, citing United States v. United States Gypsum Co., 438 U.S. 422, 436 (1978).
 
 
 40
 In Staples, the United States attempted to argue that machine guns, like grenades and narcotics, are harmful or injurious items, which may be regulated without the statute's need for a mens rea element concerning the specific characteristics that made the unregistered firearm illegal. Id. at 1799. The Supreme Court disagreed with the government, emphasizing that in previous cases, it had taken care to avoid construing a statute in such a way that would dispense with mens rea, because "doing so would criminalize a broad range of apparently innocent conduct." Id. The Court then discussed this country's history of widespread legal handgun ownership and found that one in possession of a machinegun would not necessarily know, simply by virtue of the nature of the weapon, that unregistered possession would subject him to criminal laws. Id. at 1799-1800.
 
 
 41
 Similarly, in the present case, a person who legally drinks alcohol and, according to the State, is a "chronic alcoholic" is subject to criminal laws prohibiting possession or use of a gun, which is otherwise legal. If the person does not know that he is a "chronic alcoholic," he is unaware that his gun possession or use is illegal. For example, in the present case, according to the testimony of Dr. Haglund, the defense expert witness, a symptom of alcoholism is denial or lack of knowledge that one has the disease no matter how violent one has become. Thus, in spite of petitioner's violent conduct, he may have denied his alcoholism. The Supreme Court reasoned in Staples that to violate the statute at issue, the perpetrator not only had to know that he owned a firearm, but also had to know that the firearm was categorized as a machinegun, subjecting him to criminal liability. Id. Similarly in the present case, I believe one must know that one is a "chronic alcoholic" in order to be subject to criminal liability, because alcoholism is the element of the offense which translates innocent conduct into criminal conduct. Id. at 1804. See also Liparota, 471 U.S. at 426 (offenses that require no mens rea generally are disfavored); United States v. Wulff, 758 F.2d 1121, 1125 (6th Cir.1985) (felony provision of the Migratory Bird Treaty Act unconstitutional because it did not include an explicit scienter requirement for an offense not known at common law); United States v. Renner, 496 F.2d 922, 926 (6th Cir.1974) (error for trial judge to instruct jury that actual knowledge of his indictment was not necessary in order for defendant's conviction of "possession of a firearm while under indictment"); Because Ohio Rev.Code § 2923.13(A)(4) lacks any mens rea requirement in regard to alcoholism, it is unconstitutional.
 
 
 42
 Second, the Ohio statute is unconstitutional because it is void for vagueness.[6] To pass constitutional muster, a penal statute must describe the criminal offense with sufficient definiteness to allow a person of ordinary intelligence the opportunity to understand what conduct is prohibited. The statute must also provide explicit standards to law enforcement to prevent arbitrary and discriminatory enforcement. Unless a statute's prohibitions are clearly defined, it is unconstitutionally void for vagueness. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); United States v. Haun, 90 F.3d 1096, 1100 (6th Cir.1996), cert. denied, 117 S.Ct. 691 (1997). As the Supreme Court has stated:
 
 
 43
 It is settled that, as a matter of due process, a criminal statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," or is so indefinite that "it encourages arbitrary and erratic arrests and convictions," is void for vagueness.
 
 
 44
 Colautti v. Franklin, 439 U.S. at 390 (citations omitted).
 
 
 45
 For example, in regard to the latter element, in Kolender v. Lawson, 461 U.S. 352, 358 (1983), the Supreme Court found that a statute allowing police to stop a person without probable cause to require him to produce "credible and reliable" identification was void for vagueness. The Court found the statute unconstitutional because a determination about the credibility and reliability of the identification was entirely within the subjective discretion of the police officer. Id. The Court held that the statute was "unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute." Id. at 361.
 
 
 46
 Similarly, in the present case, the Ohio statute encourages arbitrary enforcement because it does not define "chronic alcoholic" sufficiently. Police officers have no way of determining who is a "chronic alcoholic" and who is not, which is left to their subjective discretion. The term "chronic alcoholic" simply is not defined by the Ohio legislature at all. In contrast, in Doyle v. Ohio Bureau of Motor Vehicles, 51 Ohio St.3d 46 (1990), the Ohio Supreme Court reviewed a law which did provide a definition of "alcoholic." In a statute governing the revocation of drivers' licenses, an alcoholic was defined as a person who had been found guilty of three DWI offenses in the past three years. Id. at 51. In upholding the constitutionality of the statute, the Ohio Supreme Court discussed the difficulty of defining the term "alcoholic," stating:
 
 
 47
 There is, however, no precise, singular, all encompassing definition of "alcoholism" which is appropriate in all situations or describes all persons who are alcoholic. An alcoholic is not susceptible to one definitive description. A large body of literature has been written pertaining to alcoholics and alcoholism, and there cannot be found one all encompassing definition which will apply to all individuals.
 
 
 48
 Id. at 49. The Ohio Supreme Court found that because of the inherent vagueness of the word "alcoholic," in order to enforce the statute denying driving privileges to alcoholics, the word "alcoholic" had to be clearly defined. Id. The court found that the statute's definition of "alcoholic," based on three prior DWI offenses, was sufficient for administrative and enforcement purposes and was constitutional. Id. at 54.
 
 
 49
 In contrast, in the present case, Ohio Rev.Code § 2923(A)(4) lacks any definition of the term "chronic alcoholic," but instead permits a police officer to base an arrest on what he or she subjectively determines is "chronic alcoholism." The undefined term "chronic alcoholic" provides no guidance for law enforcement and, therefore, encourages arbitrary and erratic enforcement. For this reason, the statute is void for vagueness. Kolender, 461 U.S. at 358.
 
 
 50
 Absent any statutory definition of the term "chronic alcoholic" or any objective guidelines to alert a person that he will be adjudged a "chronic alcoholic," Ohio Rev.Code § 2923.13(A)(4) is also unconstitutionally vague due to lack of notice. Grayned, 408 U.S. at 108. A criminal statute must give law abiding citizens "notice" or "fair warning" of its prohibitions. Id. As the court in San Filippo v. Bongiovanni, 961 F.2d 1125, 1135 (3rd Cir.), cert. denied, 506 U.S. 908 (1992) stated, "The void for vagueness doctrine arose as an aspect of Fourth Amendment due process in the context of criminal statutes because it was thought unfair to punish persons for conduct which they had no notice could subject them to criminal punishment."
 
 
 51
 Unlike the statute at issue in Doyle, the statute in the present case does not give notice indicating when one will be adjudged a "chronic alcoholic," by the state of Ohio. In the other divisions of the statute, which make it a crime to possess or use a weapon if one has been convicted, indicted, or become a fugitive from justice, the perpetrator is put on notice by his prior conviction or indictment that he is prohibited from using or possessing a gun. In contrast, a "chronic alcoholic" may have had no prior involvement with the civil or criminal justice system giving him official warning that he is considered a "chronic alcoholic."[7] This lack of notice makes Ohio Rev.Code § 2823.12(A)(4) unconstitutionally vague. See San Filippo, 961 F.2d at 1135 (more specificity is required to overcome a vagueness challenge in a criminal context because the consequences are more severe).
 
 
 52
 Third, the statute is unconstitutional because it is overbroad on its face. The overbreadth doctrine prohibits a statute from making innocent or constitutionally protected conduct criminal. Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). In the present case, as the statute now stands, it applies to all "chronic alcoholics," no matter what stage of the disease they are in. According to DSM-IV at 202-03, follow-up studies of more highly functioning individuals show that more than 65 percent of alcoholics maintain a one-year abstinence rate following treatment and that perhaps 20 percent or more achieve long-term sobriety. However, because the Ohio statute lacks any definition of "chronic alcoholic," these individuals are unconstitutionally subject to criminal liability. United States v. 57,261 Items of Drug Paraphernalia, 869 F.2d 955, 956 (6th Cir.) (statute is overbroad because it can be extended to cover innocent conduct), cert. denied, 493 U.S. 933 (1989). As stated earlier, alcoholism is a chronic disease, which can be in remission, but for which there is no cure. Because Ohio Rev.Code § 2923.13(A)(4), as it now stands, sweeps within its ambit chronic alcoholics who are in remission and for whom gun possession and use poses no threat to society due to alcoholism, the statute is overbroad.
 
 
 53
 To conclude, Ohio Rev.Code § 2923.13(A)(4), which makes it a felony for a "chronic alcoholic" to "acquire, have, carry, or use" any firearm, is unconstitutional because it lacks a required mens rea element, it is void for vagueness, and it is overbroad. Therefore, I would REVERSE the opinion of the district court.
 
 
 
 [1]
 For a complete statement of the factual history of this case, see State v. Tomlin, 590 N.E.2d 1253 (Ohio 1992)
 
 
 [2]
 The petition for habeas corpus was referred to the magistrate judge for a report and recommendation. The magistrate judge concluded that the Eighth Amendment claim had been waived, but that the due process claim had been raised sufficiently in state court to permit its consideration on petition for habeas relief
 
 
 [3]
 Because Tomlin has not satisfied the "cause" prong of the "cause and prejudice" standard, it is unnecessary for us to inquire into whether he has satisfied the "prejudice" prong. In any event, if we did, we could not find that he was actually prejudiced by the failure of those courts to consider the merits of his claim. He has not articulated any argument which goes to the integrity of his trial or direct appeal of his conviction. See United States v. Frady, 456 U.S. 152, 170 (1982). Moreover, Tomlin raises no claim of actual innocence. See Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (holding that a petitioner who is unable to show cause and prejudice may obtain habeas review if he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent)
 
 
 [4]
 O.R.C. § 2923.13(A)(4) reads:
 (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have carry, or use any firearm or dangerous ordnance, if any of the following apply:
 (4) Such person is drug dependent or in danger of drug dependence, or is a chronic alcoholic.
 
 
 [5]
 The magistrate judge, however, raised and fully examined this issue in his report and recommendation, and concluded, as does Tomlin, that the statute fails to pass constitutional muster on this basis as well
 
 
 [1]
 Diagnostic and Statistical Manual of Mental Disorders, 4th ed. Washington, D.C.: American Psychiatric Association (1994), p. 176
 
 
 [2]
 O'Brien, Robert and Chafetz, Morris, M.D. The Encyclopedia of Alcoholism, 2nd ed. New York: Greenspring, Inc. (1991), p. 84
 
 
 [3]
 Therefore, the term "chronic alcoholic" is actually a redundancy
 
 
 [4]
 As the Court in Colautti, 439 U.S. at 395, stated, the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea
 
 
 [5]
 The statute provides in relevant part:
 (A) [N]o persons shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply:
 (4) Such person ... is a chronic alcoholic.
 
 
 [6]
 I believe the majority misunderstands the Supreme Court's "as applied" holding in regard to the void for vagueness doctrine in criminal cases not involving the First Amendment. In United States v. National Dairy Products Corp., 372 U.S. 29, 32 (1963), the Court stated that criminal statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. Void for vagueness means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617 (1954). As the Court in National Dairy Products Corp. stated, therefore, in determining the sufficiency of notice under a vagueness challenge, a statute must be examined in light of the conduct with which the defendant is charged, not on hypothetical applications. In the present case, petitioner is charged with being a "chronic alcoholic." Therefore, according to National Dairy Products Corp., "this court must consider a vagueness attack ... in relation to whether the statute sufficiently warned" petitioner that he was a "chronic alcoholic." Id. at 33. The sufficiency of the warning is not based on petitioner's conduct, but on the words of the statute. In the present case, as the state of Ohio has acknowledged in a prior opinion, there is "no precise, singular, all encompassing definition of alcoholism." Doyle v. Ohio Bureau of Motor Vehicles, 51 Ohio St.3d 46, 49 (1990)
 
 
 [7]
 For example, a definition, similar to the one found valid in Doyle, would put a person on notice that if he has been convicted of three crimes involving alcohol within the past three years, he is prohibited from owning or using a weapon. In such an instance, the alcoholic would have fair warning that his alcoholism subjected him to criminal liability for owning or using a gun