**UNITED STATES, Appellee,**

v.

**Kenneth G. MANCE, Master Sergeant, U.S. Air Force, Appellant.**

**No. 58,153.**
**ACM S27290.**

U.S. Court of Military Appeals.

July 18, 1988.

For Appellant: *Major Mark R. Bell* (argued); *Colonel Leo L. Sergi* (on brief); *Major Harry L. Heintzelman, IV.*

For Appellee: *Major Kathryn I. Taylor* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief); *Lieutenant Colonel Morris A. Tanner, Jr.*

## OPINION OF THE COURT

EVERETT, Chief Judge:

Despite appellant's pleas, a special court-martial convicted him of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a, and sentenced him to a bad-conduct discharge and reduction to the grade of E–4. The convening authority approved these results, and the Court of Military Review affirmed in a short-form opinion. We granted review of these two issues:

I

WHETHER THE MILITARY JUDGE ERRED IN NOT ALLOWING DEFENSE EXPERT TESTIMONY ON MELANIN INTERFERENCE TO GO TO THE FACTFINDERS ON A WRONGFUL USE OF MARIJUANA CHARGE, BASED ON A "POSITIVE" URINALYSIS TEST.

II

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE COURT MEMBERS THAT THE USE OF A CONTROLLED SUBSTANCE MUST BE KNOWING AND/OR CONSCIOUS, WHERE SUCH KNOWLEDGE WAS AN ESSENTIAL ELEMENT OF THE OFFENSE.

I

A

The basis of appellant's conviction is the result of a urinalysis of a sample which appellant consensually provided at his commander's request. During the trial, the prosecution introduced evidence explaining the request for the sample, the chain of custody, and the testing procedures which led to the conclusion of a "positive" result. Specifically, as to the tests, a radio immunoassay (RIA) showed a presence of marijuana metabolites in excess of the threshold of 100 nanograms per milliliter required for reporting a reading as "positive." Thereupon, a confirming test was run by using gas chromatography/mass spectrometry (GC/MS), which showed a presence of metabolites in excess of 20 nanograms per milliliter, the threshold for reporting a reading of this test as "positive."

A prosecution expert witness explained the testing procedures and testified that the GC/MS is a common procedure used in forensic labs in this country and is well accepted in the scientific community as reliable. In response to a question from a member, the expert opined that the level of metabolites in Mance's sample could not have been attained through passive inhalation. He did acknowledge on cross-examination that it was possible for Mance to have ingested marijuana in a food substance unknowingly laced with the contraband. He stated, though, that most likely there would have been some psychological effects on anyone who ingested enough marijuana to reach the test levels reached by Mance's sample.

The only defense evidence admitted came from Dr. James Woodford, an expert organic chemist. He questioned the validity of the testing procedure used on appellant's urine and stated that he himself would not rely on the data in the report to conclude that appellant's sample had contained marijuana metabolites.

Prior to Woodford's testimony, however, defense counsel indicated in an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing that the witness' testimony would be more far-ranging. Pursuant to trial counsel's motion *in limine* to restrict Woodford's testimony, inquiry revealed that, specifically, Woodford would testify that melanin—a substance responsible for skin pigmentation and present in urine—so closely resembles cannaboid fragments that assays may mistakenly identify it as marijuana, resulting in a "false positive." It also came to light, however, that Dr. Woodford was "self-taught in the forensic area," having received no formal training or forensic education; he did not have his own laboratory and did not regularly use or lease one; although he has worked on his melanin-interference theory for 3 years, he never has personally tested whether melanin interferes with the reliability of the GC/MS procedure; his own melanin test on appellant's sample was inconclusive; he has never personally tested urine spiked only with melanin and not marijuana in order to see if it would produce an ion reading as high as appellant's; and, though his theory is based on a specific publication, he was unaware of any scientist other than himself who supports his particular melanin-interference theory.

Ultimately, the military judge precluded Woodford's testimony on his melanin-interference theory

> because there's no evidence that any tests done by Dr. Woodford on his melanin-interference theory have been replicated by other scientists in the field of forensic chemistry, and his theory of melanin interference has not been accepted by other scientists in forensic chemistry, and there are no other scientists that we can go to to determine the validity of his theories.
>
> Doctor Woodford relies on an article by Fitch, Appellate Exhibit XIII, but that article does not refer to melanin, and in my view, does not support his theories. Doctor Woodford has not performed any tests with the accused's urine that would be helpful in the disposition of this case.

His testimony consists of his general theories, experiments, and knowledge. Doctor Woodford does not have access to the same equipment used by the Government to test the accused's urine. Doctor Woodford offered no testimony to the effect that melanin in the accused's urine could have interfered with testing. He also offered no testimony to the effect that blacks have a higher concentration of melanin in their urine, and hence, greater chance for misidentification.

### B

In this Court, appellant complains that the military judge erroneously applied the test for acceptance of expert scientific testimony articulated in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), rather than the test of "logical relevance" found in the Military Rules of Evidence and applied in *United States v. Gipson*, 24 M.J. 246, 251 (C.M.A.1987). In *Gipson*, this Court abandoned the *Frye* standard "as the be-all-end-all" for determining admissibility of such evidence. Rather, while acknowledging that the degree of acceptance in the scientific community is an important factor in determining admissibility of scientific evidence, we held that such admissibility is to be measured against the same yardstick generally applicable to all other evidence: relevance. Indeed, Judge Cox in his opinion for the majority rejected

> the notion that an accused has an independent, constitutional right to present favorable polygraph evidence ... because there can be no right to present evidence—however much it purports to exonerate an accused—unless it is shown to be relevant and helpful. When evidence meets these criteria, no additional justification for admissibility is necessary. Mil.R.Evid. 401 and 402.

*Id.* at 252. Accordingly, if proffered expert scientific testimony is not relevant, *see* Mil.R.Evid. 401 and 402, Manual for Courts-Martial, United States, 1984, and would not "assist the trier of fact to understand the evidence or to determine a fact in

issue," *see* Mil.R.Evid. 702, it is inadmissible. *United States v. Gipson, supra.*

■ It is abundantly clear to us that the excluded evidence here would not have assisted the trier of fact. First, Dr. Woodford could not offer any first-hand expert assistance: He was not himself a trained forensic chemist; he did not regularly engage in laboratory experimentation; he had never himself tested for melanin interference in a GC/MS test; and his own test for melanin in appellant's sample was inconclusive. Second, he could not offer any second-hand expert assistance: His theory was based on a single publication which the military judge found inapplicable to the theory regarding melanin; he acknowledged that no publication specifically addressed his theory; and he acknowledged that no other scientist embraced it. Indeed, this seems a classic case in which proffered expert testimony would have served only to confuse and to mislead the factfinders, not to help them.

Although this trial predated our decision in *Gipson*, the military judge here performed the very type of analysis we had in mind there. Notwithstanding appellant's suggestion to the contrary, the military judge did not limit the basis of his ruling to the total lack of acceptance of Dr. Woodford's theory in the scientific community; rather, he cited not only that factor, which remains an important one under our *Gipson* rationale, but also the absence of any empirical basis supporting the theory. Accordingly, the military judge did not err in restricting Dr. Woodford's testimony as he did.

## II

### A

As indicated earlier, the theory of the defense appears to have been to challenge the accuracy of the testing procedures which led to a "positive" reading of appellant's sample. No claim of lack of knowledge of any sort was made specifically by the defense.

Notwithstanding how the defense ultimately unfolded, defense counsel moved during an initial Article 39(a) session to clarify whether knowledge—an aware or knowing use—is an essential element of the offense of wrongful use. After argument by both sides on the point, the military judge agreed with the defense that the court must be convinced that the use by Mance had been knowing. Thereupon, defense counsel asked the military judge to specifically instruct accordingly, but the judge declined to alter the model instruction in his benchbook. *See* para. 3–76.4*b*, DA Pam. 27–9, *Military Judge's Benchbook* (C.1). Again, during an Article 39(a) session preceding instructions on findings, defense counsel proposed additional instructions on the element of knowing and conscious ingestion of the illegal substance, but the military judge rejected the proposed deviations from the standard instructions.

Ultimately, the judge instructed as follows, in pertinent part:

> You may find the accused guilty of an offense only if you are convinced as to guilt by legal and competent evidence beyond a reasonable doubt as to every element of the offense. In the specification of the charge, the accused is charged with the offense of use of marijuana. The elements of that offense are, at the time and place alleged, ... the accused used marijuana.... The second element is, that the use by the accused was wrongful. To be punishable under Article 112a ... use of a controlled substance ... is wrongful if it is without legal justification or authorization. Use of a controlled substance is not wrongful if it was done without the knowledge of the contraband nature of the substance. Use of a controlled substance may be inferred to be wrongful. However, the drawing of this inference is not required.

> \*　　\*　　\*　　\*　　\*　　\*

> In this case, evidence has been introduced that there was a test result reflecting that the urine of the accused contained a metabolite of THC ... Based

upon this evidence, you may justifiably infer that the accused used marijuana. The drawing of this inference is not required, and the weight and effect, if any, will depend upon the facts and circumstances, as well as the other evidence in the case.

## B

Article 112a, under which appellant was prosecuted, provides in pertinent part that "[a]ny person ... who wrongfully uses ... a substance described in subsection (b) [marijuana] shall be punished as a court-martial may direct." Thus, the elements of this offense, simply stated, are use and wrongfulness of that use. *See* para. 37b(2), Part IV, Manual for Courts-Martial, United States, 1984. How the factor of "knowledge" fits in, however, is not quite so simply stated, because that concept has undergone a certain amount of transformation over the last several decades.

Paragraph 213*a* of the Manual for Courts-Martial, United States, 1951, asserted that "[a] person's *possession* of a drug is innocent when the drug has been duly prescribed for him by a physician and the prescription has not been obtained by fraud, or when his possession is the result of accident or mistake, or when he possesses it in the performance of duty." (Emphasis added.) No express mention was made of possession being innocent due to lack of knowledge of the presence of the substance, though it arguably may have been encompassed in the provision for "accident or mistake." Also, there was no mention at all of *use* being innocent by reason of lack of knowledge either of the presence of the substance or of its nature.

These logical omissions in the 1951 Manual were addressed by this Court in *United States v. Greenwood,* 6 U.S.C.M.A. 209, 19 C.M.R. 335 (1955). Early in the opinion, the Court noted the interesting fact "that the term 'knowledge' is not mentioned in the quoted paragraph [213*a* of the 1951 Manual]—nor are any of its synonyms. Moreover, nothing at all is said with respect to the wrongful *use* of such drugs."

*Id.* at 212, 19 C.M.R. at 338. Nonetheless, pointing to the Manual's explicit recognition of innocent possession due to "accident or mistake," the Court concluded "that the element of scienter is not eliminated from the crime of wrongful possession of a narcotic drug simply because it received no explicit mention in the Manual section relating to the offense." *Id.* at 213, 19 C.M.R. at 339. Expressly rejecting "all artificial distinctions which may be offered [by the Government] in an attempt to limit this defense to the wrongful possession situation," the Court held that "want of knowledge of the physical presence of" a drug is equally relevant to charges of wrongful use. *Id.* at 215, 19 C.M.R. at 341.

The Court identified three different types of "knowledge" relating both to possession and use. The first involves a situation in which the individual is aware of what he possesses or uses but is unaware that it is illegal to do so. This "ignorance of the law," the Court held, is not a defense to either charge. *Id.* at 214–15, 19 C.M.R. at 340–41.

The second involves knowledge "of the very presence of the substance"—a situation illustrated by someone slipping a packet of a drug into the accused's pocket or dissolving a drug in the accused's drink while he wasn't looking. This "ignorance of fact" is a defense, the Court ruled, and requires appropriate instructions when raised by the evidence.

The third type of "knowledge" relates to "the physical *composition* of the substance": For instance, the accused was aware that he possessed a white powdery substance or that he dissolved a white powdery substance into his coffee; but he honestly believed that the substance was something innocuous, such as sugar. This "mistake of fact," too, is a defense to both possession and use charges and requires appropriate instructions when raised by the evidence. *Id.* at 215, 19 C.M.R. at 341.

Having thus clearly established in *Greenwood* that knowledge is involved in both possession and use offenses, this Court again discussed the concept of inno-

cent possession in *United States v. West*, 15 U.S.C.M.A. 3, 34 C.M.R. 449 (1964). West, a pharmacy specialist, had testified that, in violation of Air Force regulations, when minor "overages" were found in routine inventories of pharmacy drugs, he would place them in a labeled bottle in a leather case and place the case in an office safe. This ad hoc storehouse then could be drawn on if future inventories should reveal a shortage. One Friday, "he had secured the safe without" first putting away the leather case, so he had kept the bag himself for safekeeping, intending to return it Monday morning. *Id.* at 5, 34 C.M.R. at 451.

Preliminarily, the Court observed that knowledge "is simply another aspect of the doctrine of *mens rea*, as applied to the offense of wrongful possession of narcotics, *i.e.*, the wrongfulness involved." In this context, the Court concluded that violating "Air Force regulations relating to the safeguarding of narcotics and their inventory simply does not establish the offense charged" because the accused's acts "show a singular lack of wrongfulness of the kind contemplated by the offense in his possession of the narcotics involved." *Id.* at 7, 34 C.M.R. at 453. Explaining, the Court quoted important language from *Masters v. United States*, 42 App. D.C. 350, 356 (1914):

> "... [W]here the lawmakers have incorporated into the act a word or words descriptive of the crime which imply the necessity of 'a mind at fault before there can be a crime,' criminal intent becomes an essential fact in establishing the guilt of a person accused of its violation. The crime here does not consist in mere conversion, but in wrongful conversion. The word 'wrongful' in its legal signification must be defined from a criminal standpoint, since it is here used in a penal statute to define a crime. That the word has a well-defined meaning when used in criminal statutes is supported by Webster, who defines it as doing a thing 'in a wrong manner; unjustly; in a manner contrary to moral lay [sic] or justice.' The word 'wrongful,' like the words 'wilful,' 'malicious,' 'fraudulent,' etc., when used in criminal statutes, implies a perverted evil mind in the doer of the act. The word 'wrongful' implies the opposite of right, a perverted evil mind in the doer of the act."

*Id.* at 7–8, 34 C.M.R. at 453–54. On this basis, the Court held that the law officer had erred in refusing "the defense request that she further enlighten the court-martial concerning the elements of the offense charged and embody the defense theory of the case [i.e., innocent possession] in her instructions." *Id.* at 8, 34 C.M.R. at 454.

When the drafters of the Manual for Courts-Martial, United States, 1969 (Revised edition) began their task of writing that compendium, they of course had the benefit of the *Greenwood* and *West* opinions. Paragraph 213b of the 1969 version, then, expressly included three pertinent additions: First, in response to *Greenwood*, the 1951 language "was expanded to include use." Second, pursuant to the same decision, "the third sentence was modified by substituting lack of knowledge for accident or mistake as an example of innocent possession or use." Finally, a sentence was added as a result of *West* which stated, "If an issue is raised by the evidence as to whether possession or use by an accused charged with this offense was innocent on one of these grounds, a showing that it was not innocent on that ground becomes a requirement of proof." Para. 213*b*, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition) (July 1970). Of course, the 1969 Manual continued the language found in the 1951 version, recognized in both *Greenwood* and *West*, that "[p]ossession or use ... may be inferred to be wrongful unless the contrary appears."

As indicated earlier, the decisions of this Court, including those in *Greenwood* and *West*, seemed to treat lack of knowledge— either of the presence of the substance or of its true nature—as a defense to wrongful possession or use charges, rather than treating knowledge as an element of those offenses. On the other hand, those same

opinions, as just pointed out, recognized a permissive inference of wrongfulness "unless the contrary appears"—an inference which would appear to be useful only if knowledge of some sort were an element, rather than lack of knowledge being a defense.

The 1969 Manual continued the ambiguity. The third addition to paragraph 213b in that Manual, mentioned above, stated that showing possession or use "was not innocent ... becomes a requirement of proof"—but only "[i]f an issue is raised by the evidence" in that regard. Moreover, the same paragraph continued the language in the 1951 Manual which recognized a permissive inference of wrongfulness "unless the contrary appears."

In 1982, however, paragraph 213 of the Manual was amended: That portion of subparagraph b discussing wrongful possession or use of drugs was deleted and new subparagraph g was added, expanding the discussion of this topic. *See* para. 213, Manual, *supra* (C. 7). This new subparagraph clarified somewhat the drafters' perception of the proper role of the two facets of factual knowledge which this Court had identified in *Greenwood*.

First, subparagraph g (2) discussed possession as follows:

"Possess" means to exercise control of something. Possession may be direct physical custody like holding an item in one's hand, or it may be constructive, as in the case of a person who hides an item in a locker or car to which that person may return to retrieve it. *Possession must be knowing and conscious....*

(Emphasis added.) Thus, the drafters of this provision seem to have viewed knowledge of the presence of the drug as an aspect of the element of possession. Although there is no counterpart provision specifically addressing the offense of use, *Greenwood* instructs that knowledge of the drug's presence is equally applicable to use as it is to possession. Extrapolating, then, it appears that, under the language of Change 7 to the 1969 Manual, knowledge of the drug's presence was an aspect of the

element of possession or use in prosecutions therefor. Indeed, the same change to the Manual also modified the form specification for charging use to read that the accused did "knowingly and wrongfully" use the drug. *See* Form Specification 145, App. 6c, 1969 Manual, *supra.*

Second, subparagraph g (5) addressed wrongfulness. The provision set out three instances in which possession, use, distribution, introduction, or manufacture of a drug would not be wrongful: If the act was "done pursuant to legitimate law enforcement activities"; if it was "done by authorized personnel in the performance of medical duties"; or if it was *"without knowledge of the contraband nature of the substance* (for example, a person who possesses cocaine, but actually believes it to be sugar, is not guilty of wrongful possession of cocaine)." (Emphasis added.) The subparagraph continued:

But, possession, use, distribution, introduction, or manufacture of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary.

*The burden of going forward with evidence with respect to any such exception in any court-martial or other proceeding under the code shall be upon the person claiming its benefit.* If such an issue is raised by the evidence presented, then the burden of proof is upon the United States to establish that the use, possession, distribution, manufacture, or introduction was wrongful.

(Emphasis added.) Thus, the drafters of this provision seem to have viewed lack of knowledge of the true nature of the substance possessed or used as an affirmative defense to the element of wrongfulness.

The 1984 Manual continued this approach: In its view, knowledge of the presence of the drug is involved in the element of possession and (through the rationale of *Greenwood*) use, and knowledge of the true nature of the substance is an affirmative defense to the element of wrongfulness. *See* para. 37c(2) and (5), Part IV,

Manual for Courts-Martial, United States, 1984.[1]

## C

 Of course, while the views of the drafters of the various Manuals in writing the provisions just discussed and those of the President in promulgating them are important, they are not binding on this Court in fulfilling our responsibility to interpret the elements of substantive offenses—at least, those substantive crimes specifically delineated by Congress in Articles 77 through 132 of the Code, 10 U.S.C. §§ 877–932, respectively. *Ellis v. Jacob*, 26 M.J. 90 (C.M.A.1988). See Art. 36, UCMJ, 10 U.S.C. § 836. Accordingly, aware of the development in the Manuals of the concept of knowledge in wrongful-use offenses which had been charged under Article 134, UCMJ, 10 U.S.C. § 934, we now must determine whether that concept is somehow involved as an element of wrongful use under Article 112a.

In *United States v. Harper*, 22 M.J. 157 (C.M.A.1986), we inquired whether a laboratory report of urinalysis, alone, is sufficient as a matter of law to prove use of marijuana beyond a reasonable doubt. In the course of analyzing this issue, we discussed at some length the elements of the offense—use and wrongfulness—and what was involved in each.

In part II of the opinion, we concluded that the element of use may be proved by evidence of chemical traces of the substance in the accused's body coupled with "expert testimony that the chemical" is "not naturally produced by the body or any other substance except the drug" itself. *Id.* at 161. We made no mention at all of any type of knowledge with respect to the element of use.

In the next part, however, addressing the element of wrongfulness, we discussed knowledge extensively. Indeed, that section of the opinion began with this paragraph:

> The prosecution was also required to prove beyond a reasonable doubt that appellant's use of marihuana on each of the three occasions was wrongful. Para. 213g(5), Manual, *supra*. *Wrongfulness in this context means the knowing use of marihuana without justification or authorization. Id.; see generally United States v. Grier*, 6 U.S.C.M.A. 218, 19 C.M.R. 344 (1955); *United States v. Greenwood, supra*. See also *United States v. West*, 15 U.S.C.M.A. 3, 34 C.M.R. 449 (1964). In the absence of evidence to the contrary, the prosecution may meet this burden by reliance on a permissive inference of wrongfulness which has long been recognized by military law as flowing from proof of the predicate fact of use of a contraband drug. *Id.; United States v. Fears* [11 U.S.C.M.A. 584, 29 C.M.R. 400 (1960)] and *United States v. Crawford*, [6 U.S.C.M.A. 517, 20 C.M.R. 233 (1955)] ...

22 M.J. at 162 (emphasis added). Subsequently, in pointing to appellant's complaint that this permissive inference unfairly shifted the burden of going forward with evidence, we again referred to this defini-

---

1. Curiously, though, instructions in the Military Judges' Benchbook seem to continue the ambiguity that appeared in pre–1982 versions of the Manual. For instance, paragraph 3–76.1.*b*, which provides instructions on elements of the offense of wrongful possession of a drug, specifically notes that "[p]ossession must be knowing and conscious." DA Pam. 27–9 (C.1) (Feb. 15, 1985). On the other hand, paragraph 5–11 IV observes that "[a]ctual knowledge by the accused of the presence and nature of the contraband drugs is necessary for a finding of guilty in possessory and other drug offenses. Ignorance can arise with respect to the presence of drugs, and mistake can be raised as to knowledge of their identity.... When such issues are raised, the military judge must instruct upon them, *sua sponte.*" DA Pam. 27–9 (May 1, 1982). Thus, these two provisions appear to view knowledge of the presence of the drug inconsistently—one as an aspect of the element of possession (or use) and the other as an affirmative defense, requiring instructions only when raised by the evidence. To add further to the curiosity, the form specification in the 1984 Manual recommended to charge wrongful use does not contain the language inserted in Change 7 of the 1969 Manual regarding knowing use. Thus, paragraph 37f(2), Part IV, 1984 Manual, *supra,* suggests charging only that the accused did "wrongfully use" a controlled substance.

tion of wrongfulness as an "element of the offense." *Id.* Two later passages in this section of the opinion also seem relevant. In one we stated:

> In this context we hold there was sufficient *prima facie* evidence presented for the military judge to find beyond a reasonable doubt that appellant *knowingly* and *wrongfully* used marihuana.

(Emphasis added.) In the other, we stated:

> In this context, the permissive inference of wrongfulness and the other evidence of knowledge were sufficient evidence to prove this element of the offense beyond a reasonable doubt. *See United States v. Greenwood* [supra] and *United States v. Ford,* [4 U.S.C.M.A. 611, 16 C.M.R. 185 (1954) ] ... *See generally Barnes v. United States,* 412 U.S. [837] at 845 n. 9, 93 S.Ct. [2357] at 2362 n. 9 [37 L.Ed.2d 380].

22 M.J. at 163. The first of these passages which refers to "knowingly and wrongfully" would indicate that "knowledge" is separate from wrongfulness. The other passage, however, would suggest that "knowledge" is encompassed within wrongfulness.

In *United States v. Ford,* 23 M.J. 331 (C.M.A.1987), we considered the validity and the quality of the permissive inference of wrongfulness in the context of a prosecution under Article 112a—the inference mentioned in *Harper* and established by military-law precedent in connection with prosecutions under Article 134. *See United States v. Greenwood, supra.* Ultimately, we ruled that whether to draw the inference at all is a matter for the finders of fact: "It *may* be drawn where no contrary evidence is admitted" if the prosecution can convince the factfinders that they *should* draw it; and it *"may* be drawn where contrary evidence is admitted" if the prosecution can convince the factfinders "beyond a reasonable doubt that this contrary evidence should be disbelieved or that the inference should otherwise be drawn." *Id.* at 335.

In the process of reaching this conclusion, we noted:

> Wrongful use in the context of Article 134 ... and paragraph 213*g* (5) [of the 1969 Manual] ... meant "the knowing use of marihuana without justification or authorization." *See United States v. Harper,* 22 M.J. at 162. The legislative history of Article 112a does not suggest the word "wrongfully" as used in this new codal provision has a different meaning. S.Rep. No. 53, 98th Cong., 1st Sess. 29 (1983). *See also* 21 U.S.C. § 844; *United States v. Holloway,* 744 F.2d 527, 532 (6th Cir.1984).

*Id.* at 332–33. The reference to "knowing use" indicates that "knowledge" is separate from "use." Immediately thereafter, the opinion refers to "wrongfulness, including knowledge" and accompanies the reference with this footnote (n. 1):

> Federal law expressly provides that proof of knowledge is required for conviction for possession of a controlled substance. 21 U.S.C. § 844(a). *See United States v. Holloway,* 744 F.2d 527, 532 (6th Cir.1984). Under earlier federal narcotic statutes, knowledge or consciousness of possession was considered an element of this offense by implication. *See* Sandler, *The Statutory Presumption in Federal Narcotics Prosecutions,* ... 57 J.Crim.Law, Criminology and Police Sci. 7, 13 (1966).

How, then, can we reconcile these various treatments of knowledge? We conclude that the answer lies in *Greenwood*'s distinction between different types of "knowledge." Under our interpretation of Article 112a, knowledge of the presence of the substance is a component of "possession" and of "use." Thus, a person does not possess a substance unless he is aware of its presence. If someone slips a drug into a servicemember's pocket without his being aware thereof or gives him a box which he believes to be empty but which actually contains drugs, then he lacks the "knowledge" requisite for possession. Likewise, if someone drops a controlled substance into a glass from which the servicemember is drinking but he is unaware that this has occurred, he lacks the "knowl-

edge" which is required for "use." In prosecutions for either possession or use of a controlled substance, the presence of that substance could permit a logical inference under appropriate circumstances that the accused had the requisite knowledge of its presence; and this permissive inference would be legally sufficient to satisfy the Government's burden of proof as to knowledge. *See United States v. Ford* and *United States v. Harper*, both *supra.*

■ The element of "wrongfulness" in charges of drug possession or use involves a different type of "knowledge"—namely, knowledge of the character of the substance involved. Thus, if a servicemember is given a box containing a powder which he believes to be some type of sugar but which actually is cocaine, he lacks the "knowledge" required as a component of the element of "wrongfulness." Likewise, if he pours the powder into the coffee he drinks, while still believing it to be sugar, he has not "wrongfully" used cocaine.

■ Of course, for possession or use to be "wrongful," it is not necessary that the accused have been aware of the precise identity of the controlled substance, so long as he is aware that it is a controlled substance. For example, if he believes he possesses cocaine when, in fact, he possesses heroin, he could be convicted of wrongful possession of heroin because he had "knowledge" adequate to establish wrongfulness.[2] Likewise, if he knows the identity of a substance that he is possessing or using but does not know that such possession or use is illegal, his ignorance in this regard is immaterial because, as *Greenwood* recognized, ignorance of the law is no defense.

■ Insofar as the "knowledge" needed to show "wrongfulness" is concerned, the presence of the controlled substance, under appropriate circumstances, authorizes a permissive inference of knowledge. *See United States v. Ford* and *United States*

*v. Harper*, both *supra.* Thus, both the "knowledge" required to show "possession" or "use" and the "knowledge" required to show "wrongfulness" may be inferred by the factfinder from the presence of the controlled substance.

### D

■ The military judge has an obligation to advise the court members of each element of any offense with which the accused is charged or which is included therein, *see* Art. 51(c), UCMJ, 10 U.S.C. § 851(c); R.C.M. 920(e)(1), 1984 Manual, *supra.* We conclude that, to be complete, an instruction on wrongful possession or wrongful use of controlled substances should include specific reference to the two types of "knowledge" which are required to establish criminal liability.

Defense counsel submitted two requests for instructions concerning knowledge and the ingestion of the drug; and the military judge apparently agreed that knowledge of some type was an element of the offense. However, having determined to rely on the instruction in the Military Judges' Benchbook, the judge only referred to "knowledge of the contraband nature of the substance." Thus, no mention was made of knowledge of the drug's presence.

In *United States v. Gilbertson*, 1 U.S.C.M.A. 465, 469, 4 C.M.R. 57, 61 (1952), we concluded that inadequacy of instructions on an element of the offense

> requires reversal. "It is not for us to determine what the court members would have found had they been properly advised on the elements." United States v. Rhoden, (No. 153), 1 USCMA 193, 2 CMR 99, decided February 26, 1952; Little v. United States, 73 F2d 861, 866 (CA 10th Cir.).

However, in *United States v. Goddard*, 1 U.S.C.M.A. 475, 476, 4 C.M.R. 67, 68 (1952), we acknowledged that "under certain circumstances" an instructional error on an element of the offense "might be an unim-

---

**2.** If a servicemember believes he possesses cocaine when, in fact, he possesses sugar, he can at most be convicted of attempted possession of cocaine. The *mens rea* must be accompanied by the *actus reus.*

portant error." Moreover, even though Article 51(c) of the Code expressly requires that the military judge instruct as to "reasonable doubt," we declined to reverse the conviction in *United States v. Salley*, 9 M.J. 189 (C.M.A.1980), even though the instruction on reasonable doubt there was "confusing." *Id.* at 193.

These cases are entirely consistent with the result reached 2 years ago by the Supreme Court on this issue of harmless constitutional error. In *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Court addressed a situation in which the judge's jury instructions erroneously had shifted the burden of proof to the accused by presuming malice. The issue before the Court was whether it was appropriate in such an instance to apply the harmless-beyond-a-reasonable-doubt doctrine first articulated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

After briefly surveying the post-*Chapman* cases in which it had applied this harmless-error analysis, the Court acknowledged that even "*Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the case." 106 S.Ct. at 3106. In a footnote, the Court observed that

> [e]ach of the examples *Chapman* cited of errors that could never be harmless either aborted the basic trial process, *Payne v. Arkansas*, 356 U.S. 560 [78 S.Ct. 844, 2 L.Ed.2d 975] ... (1958) (use of coerced confession), or denied it altogether, *Gideon v. Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] ... (1963) (denial of counsel); *Tumey v. Ohio*, 273 U.S. 510 [47 S.Ct. 437, 71 L.Ed. 749] ... (1927) (biased adjudicator).

*Id.* n. 6. Of particular importance to the present case involving an instruction on an element of the charged offense, the Supreme Court made clear:

> Similarly, harmless-error analysis presumably would not apply if a court *directed a verdict for the prosecution* in a criminal trial by jury. We have stated that "a trial judge is prohibited from

entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelmingly the evidence may point in that direction." [Citations omitted.] This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. [Citation omitted.] *Where that right is altogether denied,* the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.

*Id.* 106 S.Ct. at 3106 (emphasis added).

Applying these principles to the facts before it, the Supreme Court held that defendant Clark had not been denied a fair trial by the erroneous shifting of the burden of proof on the element of malice. The Court reasoned:

> When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. *Connecticut v. Johnson*, 460 U.S. 73, 96–97 [103 S.Ct. 969, 982–983, 74 L.Ed.2d 823], ... (1983) (Powell, J., dissenting).

106 S.Ct. at 3107–08. Explaining in a footnote, the Court reminded us:

> "Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue." *Connecticut v. Johnson*, 460 U.S. at 95, n. 3 [103 S.Ct. at 982, n. 3] ... *Cf. Jackson v. Virginia*, 443 U.S. 307, 320, n. 14 [99 S.Ct. 2781, 2790, n. 14, 61 L.Ed.2d 560] ... (1979) (suggesting that failure to instruct a jury as to the reasonable-doubt standard cannot be harmless).

106 S.Ct. at 3107 n. 8.

We conclude, then, that when a judge *omits entirely* any instruction on an element of the charged offense, this error may not be tested for harmlessness because, thereby, the court members are prevented from considering that element at all. In a real sense, the members in such an instance are directed to find that the

evidence proves that element beyond a reasonable doubt. On the other hand, when a judge's instruction adequately identifies an element to be resolved by the members and adequately requires that the members find the necessary predicate facts beyond a reasonable doubt, then an *erroneous* instruction on that element may be tested for harmlessness. *See Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168, 175–78 (6th Cir.1986), for a full analysis of the decision in *Rose v. Clark, supra,* arriving at this same conclusion.

■ In the present case, the judge did instruct on knowledge "of the contraband nature of the substance," which is an aspect of "wrongfulness." Logically, the members could not have concluded that appellant knew the contraband nature of the substance that he had used without being aware that appellant also had to have known that he had ingested the substance. In this light, it appears that the matter of appellant's knowledge of the drug's presence was raised for the factfinder—albeit indirectly. Accordingly, it is appropriate to test omission of a specific instruction in this regard for harmlessness. *See Rose v. Clark, supra.*

■ We are sure that failure to instruct on "knowledge" as a component of "use"—although error—did not prejudice appellant. Admittedly, defense counsel did request more specific instructions on knowledge.[3] However, there was no evidence at all that appellant had ingested the marijuana unknowingly. Indeed, there was not even a suggestion to that effect by the defense, although defense counsel rather unsuccessfully did probe this possibility during cross-examination of the prosecution's expert witness. Under the circumstances here, we are convinced beyond a reasonable doubt that, if instructed on "knowledge" as an aspect of "use," the court members would not have been any less willing to infer wrongful use from the

evidence showing that marijuana had been present in appellant's body.

### E

■ In light of the earlier ambiguity in Manual provisions and in this Court's opinions concerning the treatment of knowledge, it is appropriate to state that, henceforth, in prosecutions for wrongful use or wrongful possession, the military judge should instruct the court members that, in order to convict, the accused must have known that he had custody of or was ingesting the relevant substance and also must have known that the substance was of a contraband nature—regardless whether he knew its particular identity. The judge must give this instruction even absent a defense request, since the waiver provision in "R.C.M. 920(f) does not focus on '[r]equired instructions' such as those on reasonable doubt, elements of the offenses, and affirmative defenses ..." *Cf. United States v. Taylor*, 26 M.J. 127, 128 (C.M.A. 1988). Without receiving such advice that there must exist " 'a perverted evil mind in the doer of the act,'" *see United States v. West, supra* at 7, 34 C.M.R. at 453, the court members might impose an absolute criminal liability because of the very presence of the controlled substance.

■ In line with our opinions in *Harper* and *Ford*, the military judge may also instruct the court members that presence of the controlled substance authorizes a *permissive inference* under appropriate circumstances that the accused had the type of knowledge required to establish "possession" or "use," as well as the type of "knowledge" required to establish "wrongfulness." In this way the members will be fully informed as to the legal significance of the test results or other evidence tending to show presence of the controlled substance in the accused's body.

---

**3.** In *United States v. Cotten*, 10 M.J. 260, 262 (C.M.A.1981), where the defense counsel had objected at trial to a misleading instruction on "reasonable doubt," the court applied the test

for constitutional error—namely, whether the error was harmless beyond reasonable doubt. We are applying the same test in this case.

## III

The decision of the United States Air Force Court of Military Review is affirmed.

COX, Judge (concurring):

I join the scholarly opinions of Chief Judge Everett and Judge Sullivan. I write only to remind the Bench and Bar of the exception to the rule.

The holding that "knowledge," as a *mens rea* concept, includes a guilty belief, does not exhaust its meaning. Circumstances sometimes cause a person to realize that what he plans to do may bring about a result which the law seeks to prevent. If he wilfully goes ahead with his plan, while deliberately refusing to find out about this, he is deemed at common law to have knowledge of what he would have known had he not made it a point not to know. Such conduct has been designated in various ways, such as a "wilful shutting of the eyes," "deliberate ignorance," "studied ignorance," "purposely abstaining from all inquiry as to the facts," "avoidance of any endeavor to know," "a conscious purpose to avoid learning the truth," and "deliberately chose not to learn." Whatever the particular form of expression, the intent is to make clear that, within the present context, the common law holds that one knew what he would have known if he had not deliberately avoided knowing.

R. Perkins and R. Boyce, *Criminal Law* 867–68 (3d ed. 1982) (footnotes omitted).

SULLIVAN, Judge (concurring):

On July 23, 1986, appellant was found guilty of the offense of wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. Defense counsel's basic argument to the members was that erroneous testing procedures led to a positive reading of appellant's urine sample. There was no direct evidence presented that appellant in any sense unknowingly used marijuana; instead the suggestion was that he did not use marijuana at all.

Chief Judge Everett notes that prior to trial the defense requested an instruction that knowledge was an element of this drug offense. *See generally* Art. 51(c), UCMJ, 10 U.S.C. § 851(c). He also construes the remaining defense requests as seeking instructions that two types of knowledge are necessary for conviction of wrongful use of marijuana under Article 112a. The first type of knowledge is an awareness of the presence of the drug; the second is knowledge of the nature of the drug. He approves of these requests in lieu of the standard-type instruction given by the judge,[1] but he concludes that failure to give such instructions in the present case was harmless error. *See generally Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). *Cf. Hoover v. Garfield Heights Municipal Court*, 802 F.2d 168, 177–78 (6th Cir.1986). I agree.

Drug offenses are regulatory offenses which by their nature afford great discretion to the legislature in their definition. *See United States v. Freed*, 401 U.S. 601, 609–10, 91 S.Ct. 1112, 1118–19, 28 L.Ed.2d 356 (1971). The wording of the various Manuals for Courts-Martial explaining military drug offenses has particularly troubled this Court over the years. *See United States v. Grier*, 6 U.S.C.M.A. 218, 225, 19 C.M.R. 344, 351 (1955). *Cf. Parker v. Levy*, 417 U.S. 733, 753–54, 94 S.Ct. 2547, 2560–61, 41 L.Ed.2d 439 (1974). As a result, some ambivalence on the status of knowledge as an element or affirmative defense in military drug cases appeared in the earlier decisions of this Court. Consequently, the practice developed of refusing to reverse convictions for failure to instruct on knowledge unless evidence raising the issue of a lack of knowledge had been presented at a court-martial. *See United States v. Grier, supra; United States v. Hughes*, 5 U.S.C.M.A. 374, 377–78, 17 C.M.R. 374, 377–78 (1954); *see generally United States v. Wallace*, 2 U.S.C.M.A. 595, 599, 10 C.M.R. 93, 97 (1953). *Cf. United States v. Lampkins*, 4 U.S.C.M.A. 31, 15 C.M.R. 31 (1954). Under this practice, appellant would not be entitled to relief. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

1. See principal op. at 248–249.

The perpetuation of this appellate practice and ambiguous Manual provisions have engendered a persistent doubt as to the status of knowledge as an element of the offense in drug cases. *See United States v. Yates*, 16 C.M.R. 629, 638–39 (A.F.B.R.), *pet. denied*, 16 C.M.R. 292 (1954). Recent pronouncements of this Court in *United States v. Ford*, 23 M.J. 331 (C.M.A.1987), and *United States v. Harper*, 22 M.J. 157 (C.M.A.1986), however, have made clear that knowledge is an element of these offenses. *See* para. 213*g* (2), Manual for Courts-Martial, United States, 1969 (Revised edition) (C. 7). Today, application of the test for harmless error provided in *Rose v. Clark*, *supra*, for failure to so instruct the members should eliminate any lingering question concerning Congress' intent in this matter.

As for matters of substance, the intimate relationship between the offenses of possession of a drug and use of a drug is well established as a matter of military law. Possession of a drug without proper authorization was expressly prohibited by paragraph 4, General Orders No. 25, War Department, March 11, 1918. Later, it was held that use of a drug was a form of possession prohibited by this order because it constituted control of the drug with the right of disposal. *United States v. Barreto*, 3 B.R. (ETO) 137, 143–44 (1943). *See generally* J. Snedeker, *Military Justice under the Uniform Code* 907 (1953).We note that no contrary explanation of the use of a drug has ever been provided in the Manual for Courts-Martial. *See* App. 4, Form Specification 182, Manual for Courts-Martial, U.S. Air Forces, 1949; App. 6c, Form Specification 137, Manual for Courts-Martial, United States, 1951; para. 213*g*, 1969 Manual, *supra* (C. 7); para. 37, Part IV, Manual for Courts-Martial, United States, 1984. Accordingly, the Chief Judge is amply justified in considering possession principles in addressing the elements of a use offense. *See United States v. Crawford*, 6 U.S.C.M.A. 517, 519, 20 C.M.R. 233, 235 (1955); *United States v. Grier, supra* at 221, 19 C.M.R. at 347.

Possession is defined in *Barreto* as follows:

The "possession" prohibited by the General Order means not only a mere physical holding, but also includes control of the thing possessed with the right to dispose of it in any manner the possessor sees fit (49 C.J., sec. 1, p. 1094); *Colbaugh v. United States*, 15 Fed (2nd) 929, 931).

3 B.R. (ETO) ·at 143–44. Yet, despite this reliance on the general legal meaning of the term and federal practice, no particular explanation of possession was provided in the Manuals for Courts-Martial until 1982, when Change 7, 1969 Manual, *supra*, became effective. *See United States v. Major*, 33 B.R. (ETO) 47, 49 (1945). Accordingly, prior to that time, some doubt may have existed as to the type of possession which was sufficient for conviction of this offense under Article 134, UCMJ, 10 U.S.C. § 934, and which could serve as a basis for the permissive inference of wrongfulness found in paragraph 213*a*, 1951 Manual, *supra*. *See United States v. Yates, supra.* However, after 1982, no serious argument can be made that possession for either purpose can be found to have occurred without knowledge of the presence of the substance possessed. *See* para. 213*g* (2), 1969 Manual, *supra* (C. 7).

The federal statute prohibiting simple possession makes it unlawful "knowingly or intentionally to possess a controlled substance." 21 U.S.C. § 844(a). It requires proof that the guilty person "knew the illicit nature of the substance he possessed and he purposely possessed such substance." *United States v. Holloway*, 744 F. 2d 527, 532 (6th Cir.1984). *See generally United States v. Jewell*, 532 F. 2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). Prior to enactment of that statute, knowledge of the presence of the drug possessed at the very least was included in possession as a matter of federal law even absent the above noted statutory language. *Ezzard v. United States*, 7 F. 2d 808, 810 (8th Cir.1925). *See Grantello v. United States*, 3 F. 2d 117, 118 (8th Cir.1924); *Pierriero v. United States*, 271 F. 912, 915–16 (4th Cir. 1921) (Webb, J., dissenting); *Sorenson v.*

*United States,* 168 F. 785, 798–99 (8th Cir. 1909). *See generally United States v. Freed, supra* 401 U.S. at 607, 91 S.Ct. at 1117; *Baender v. Barnett,* 255 U.S. 224, 41 S.Ct. 271, 65 L.Ed. 597 (1921). *Cf. United States v. Balint,* 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). *Pitta v. United States,* 164 F.2d 601, 602 (9th Cir.1947), a case relied on in *United States v. Yates, supra,* is not inconsistent with these decisions. This precedent further supports the Chief Judge's opinion.

Accordingly, I agree with my Learned Brother. The dual-prong approach to the question of knowledge required to be proven in drug possession cases is well recognized.[2] *See* F. Bailey and H. Rothblatt, *Handling Narcotic and Drug Cases* 42 (1972); *Anno.: Narcotic-Possession-What Constitutes,* 91 A.L.R. 2d 810, 821 (1963); Comments: Katz, *Possession of Narcotic Drugs Under State and Federal Statutes,* 25 U.Miami L.Rev. 306, 310 (1971); 25 Am Jur 2d Drugs, Narcotics and Poisons § 22 at 298–99. Moreover, its applicability to drug-use cases is appropriate in light of the language of Article 112a, the decisions of this Court cited by the Chief Judge, and the Manual provisions promulgated since 1982. *See* para. 213*g* (2) and (5), 1969 Manual, *supra* (C. 7). *See also* para. 213*b,* 1969 Manual, *supra* (original version). However, some additional comment is warranted so as to reconcile the principal opinion with previous decisions of this Court in *United States v. Ford* and *United States v. Harper,* both *supra,* and on the impact today's decision may have on the permissive inference of wrongfulness found in paragraph 37c (5), Part IV, 1984 Manual, *supra.*

It first must be noted that neither *Ford* nor *Harper* particularly mentioned either of the two types of knowledge discussed by the Chief Judge in his opinion. These deci-sions speak in general terms of knowledge (*United States v. Harper,* 22 M.J. at 162); or simply the knowing use of drugs (*United States v. Ford,* 23 M.J. at 336). However, such a generally phrased knowledge requirement for military drug-use offenses logically and necessarily encompasses the two more specific types of knowledge noted by the Chief Judge. *See United States v. Fears,* 11 U.S.C.M.A. 584, 589–90, 29 C.M.R. 400, 405–06 (1960). In fact, it should be pointed out that both *Greer* and *Greenwood* were cited in *Harper* with respect to an explanation of use (22 M.J. at 162), and in *Ford* with reference to the required knowledge (23 M.J. at 336). Accordingly, the more precise articulation of the knowledge requirement by the Chief Judge wreaks no havoc with established precedent. *See* para. 213*b,* 1969 Manual, *supra.*

Turning to the permissive inference of wrongfulness including knowledge, its operation must be rephrased to account for the more particular articulation of the source of these knowledge requirements.[3] In accordance with the principal opinion, the knowledge to be inferred for purposes of wrongfulness is knowledge of the *nature* of the contraband substance used. *Cf. United States v. Ford, supra.* For the reasons stated in *Ford* (23 M.J. at 337), this type of knowledge can be rationally inferred from a use accompanied by knowledge of the presence of the drug used. As usual, the conscious use of a drug can be shown by the presence in the body of the drug as shown by scientific evidence, proof that the drug is not naturally produced by the body, and proof that it is only produced by the controlled substance. *See United States v. Harper, supra* at 161. The bottom line is that the same circumstantial evidence *may* give rise to the same knowledge broken down in its component parts.

---

**2.** This approach, however, is not universal. *See State v. Morris,* 331 N.W.2d 48, 54 (N.D.1983) (rejects both types of knowledge as elements of the statutory offense of possession); *State v. Cleppe,* 96 Wash.2d 373, 635 P.2d 435 (1981) (suggests some type of lack of knowledge may be raised as an affirmative defense).

**3.** *Harper* and *Ford* also attribute this general knowledge requirement in military drug cases to the word wrongful. *United States v. Fears,* 11 U.S.C.M.A. 584, 589–90, 29 C.M.R. 400, 405–06 (1960). *See generally* R. Perkins and R. Boyce, *Criminal Law* 862 (3d ed. 1982). *See People v. Gory,* 28 Cal.2d 450, 170 P.2d 433, 438 (1946), cited in *United States v. Grier,* 6 U.S.C.M.A. 218, 221, 19 C.M.R. 344, 347 (1955).