**550**

UNITED STATES, Appellee,

v.

Sergeant Donald D. DOZIER,
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, United States
Army, Appellant.

ACMR 8702738.

U.S. Army Court of Military Review.

24 Feb. 1989.

Reconsideration En Banc Denied
16 March 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Brian D. DiGiacomo, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Gary L. Hausken, JAGC, Captain Patrick D. O'Hare, JAGC (on brief).

Before MYERS, SMITH, and BASHAM, Appellate Military Judges.

OPINION OF THE COURT

SMITH, Judge:

On 7 October, 24 and 30 November, and 1-5, 7, and 8 December 1987, appellant was tried before a general court-martial composed of officer and enlisted members at Fort Ord, California. Contrary to his pleas, appellant was convicted of communicating, by telephone at divers times between 1 February 1986 and 1 May 1987, indecent language to the wife of a fellow soldier in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. Testimony indicated that approximately two hundred telephone calls were made over the 14-month period. The convening authority approved appellant's sentence to a bad-conduct discharge and reduction to Private E1.

Appellant alleges that the military judge erred, and denied appellant his sixth amendment right to present a defense, when he refused to allow appellant the right to present voice identification evidence in the form of expert testimony.

During an Article 39(a)[1] session, appellant presented the testimony of Doctor Arthur Compton. Doctor Compton had received a Masters Degree in Speech and Hearing Science and a Ph.D. in Linguistics, Experimental Psychology, and Speech and Hearing Science. He had extensive experience in the treatment of speech defects in children and had developed programs to train adults with foreign or regional accents to alter their speech patterns in order to improve their speaking ability in standard English. Doctor Compton testified that he and members of his profession use a standard method of transcribing speech patterns or regional dialects called phonetic transcription. He further testified that it

---

1. Article 39(a), UCMJ, 10 U.S.C. § 839(a).

is standard practice for speech pathologists to use phonetic transcription in many kinds of treatment and research in linguistic speech pathology. Phonetic transcription assigns a symbol for various language sounds so that a particular person's speech can be recorded and reread accurately throughout the profession. He also testified that different people, particularly those with differing dialects, have different language sounds and that it is sometimes possible to distinguish one person's speech from another.

In this case, Dr. Compton and two colleagues had transcribed a recorded obscene phone call, alleged to have been made by appellant, as well as recordings of the appellant's speech. All three of the transcribers independently concluded that appellant had not made the recorded obscene calls. Trial defense counsel offered that Dr. Compton and his two associates were prepared to testify as to the method used, explain the differences in the tapes, and that their conclusion was that appellant's voice had not been recorded making the alleged telephone call.

The military judge refused to allow the expert testimony, ruling:

> It's the opinion of this court that the testimony of Doctor Compton and his associates involve novel scientific techniques of questionable reliability. I consider the probative value to be marginal and I conclude that his testimony would tend to mislead the members of the court and would improperly invade the providence [sic] of the jury; therefore, the testimony of Compton and associates will not be permitted.

At trial, the government sought to establish that the voice on the tape was appellant's by offering testimony of his supervi- sors. His immediate supervisor concluded that "the voice on the tape is very similar to that of [appellant's] voice." His observation was based upon the fact that he recognized certain, "typically southern-accent colloquialisms" common to his experience when he was "stationed in the southern states; specifically in Georgia and North Carolina." The Commander of the Fort Ord Criminal Investigation Command (CID) testified that she believed the voice on the tape was appellant's because of her "hearing memory of his vocal pattern" and the fact that appellant's "vowels are—rather drawn out—almost a southern drawl." Finally, a CID warrant officer who had listened to the tape noted that appellant "really did not speak with a heavy accent."

Appellant offered the testimony of his mother, father, mother-in-law, neighbors, and wife. All stated that the voice on the tape was not appellant's voice.

In this case, the military judge's basis for excluding Dr. Compton's testimony was inconsistent with the facts. The admissibility requirements for expert testimony are (1) that the testimony is relevant under Mil.R.Evid. 401;[2] (2) that the testimony is helpful to the factfinders, considering Mil. R.Evid. 702;[3] and (3) that the evidence's probative value outweighs any collateral dangers expressed in Mil.R.Evid. 403.[4] *United States v. Abeyta*, 25 M.J. 97, 98 (C.M.A.1987) *cert. denied*, —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *United States v. Gipson*, 24 M.J. 246, 251–52 (C.M.A.1987). These rules are intended to broaden the admissibility of expert testimony, not limit it. *United States v. Snipes*, 18 M.J. 172, 178 (C.M.A.1984).

It does not appear that expert testimony of the nature offered has been used before

---

2. Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 401 [hereinafter M.C.M., 1984 and Mil.R.Evid., respectively] (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

3. A witness qualified as an expert by knowledge, skill, experience, training, or education may tes- tify regarding scientific, technical or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. Mil.R.Evid. 702.

4. Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members." Mil.R. Evid. 403.

in criminal trials.[5] Phonetic transcription is, however, generally accepted within the linguistics profession as a method of transcribing speech. Contrary to the military judge's ruling, appellant had established at trial that the evidence or at least the method employed to establish the evidence was of a type generally accepted in the scientific community.[6]

While acceptance within the scientific community is an important factor in determining the admissibility of scientific evidence, it is the relevance and helpfulness[7] of the evidence which determines its admissibility. *United States v. Mance*, 26 M.J. 244, 247 (C.M.A.) *cert. denied,* — U.S. ——, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988). In this case, Dr. Compton was established as an expert in the field of speech pathology with a great deal of experience in the study of speech sounds. Specifically, Dr. Compton testified that he was able to compare speech sounds and determine whether the speech sounds were the same or different from standard English. Doctor Compton was able to make this comparison by transcribing the speech sounds into a phonetic alphabet or transcription. Although Dr. Compton had never applied phonetic transcription to determine the identity of an unknown voice, Dr. Compton and his colleagues had independently applied the same transcription technique to the voice known to be appellant's and the unknown voice as he had used in hundreds of other voice or speech analyses. From their analysis of the tape recorded voices, Dr.

Compton and his colleagues determined that there were definite phonetic features in appellant's speech that were not in the "obscene caller's" speech. Doctor Compton testified that he could discuss his analysis of speech sounds with the court members in such a manner that they could easily understand the application of phonetic transcription to speech sounds and would not be confused by the analysis made in this case.

We find appellant established that Dr. Compton's testimony was relevant and reliable, would be helpful to the trier of fact, and would not have been misleading. The military judge erred in refusing to allow the proffered testimony and in doing so impermissibly hampered appellant in presenting a defense.[8]

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge MYERS and Judge BASHAM concur.

---

5. In a civil case, the United States District Court at Fort Wayne, Indiana, considered evidence of a phonetic transcription in determining a dispute between two different radio stations with similar sounding call letters. That court found the phonetic transcription and analysis used in that case convincing and reasonable, "particularly as it backs up the spectographic analyses." *Pathfinder Communications Corporation v. Midwest Communications Co.*, 593 F.Supp. 281, 284 n. 1 (N.D.Indiana 1984). Our research has not revealed any other reported case in which phonetic transcription was used.

6. If we were applying the admissibility test set out in *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923), we would accept Dr. Compton's testimony based on the fact that "phonetic transcription" is a generally accepted technique used within the field of speech pathology.

7. Determining whether testimony will be "helpful" involves the balancing of

    (1) the soundness and reliability of the process or technique used in generating the evidence, (2) the possibility that admitting the evidence would overwhelm, confuse, or mislead the jury, and (3) the proffered connection between the scientific research or test result to be presented, and particular disputed factual issues in the case.

*United States v. Gipson*, 24 M.J. at 251 (quoting *United States v. Downing*, 753 F.2d 1224, 1237 (3d Cir.1985)).

8. We also note that the record is incomplete in that Prosecution Exhibit 2, the tape recording of the obscene phone calls taped by the victim, is not included in the record of trial.