UNITED STATES, Appellee,

v.

**Specialist Four Robert J. McGRAW, 595–09–9022, United States Army, Appellant.**

**ACMR 8801742.**

U.S. Army Court of Military Review.

29 Jan. 1990.

For Appellant: Captain Thomas A. Sieg, JAGC, Captain Jeffrey J. Fleming, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Karen V. Johnson, JAGC (on brief).

Before KUCERA, GILLEY, and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial, composed of officer members, of two specifications of distribution of lysergic acid diethylamide (LSD) and one specification of distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp.V 1987) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for three years and reduction to Private E1. The convening authority approved the adjudged sentence.

In his first assignment of error, the appellant claims that

THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE MEMBERS ON THE ELEMENT OF KNOWLEDGE REQUIRED FOR A FINDING OF WRONGFUL DISTRIBUTION OF CONTROLLED SUBSTANCES.

Consistent with the strategy that the appellant was entrapped, the trial defense counsel in his opening statement told the court that the defense was going to admit that all of the government's evidence was correct. "We're not going to contest one issue on the evidence itself." Record at 108.

In the government's case on the merits, Specialist Kinder testified that on 9 February 1988 the appellant brought from his car, and gave to her, a tab of LSD. This transaction was charged in Specification 1. Record at 113–114.

Investigator Galanos testified that on 2 March 1988, the appellant pulled out a book from under the bench seat of his car. From that book, the appellant took a small plastic baggie and handed it to Galanos explaining it was a "hit" of LSD. Record at 163. This transaction was charged in Specification 2.

Investigator Galanos further testified that on 4 April 1988, the appellant pulled out from the back seat of his car a small box and handed it to Galanos. Galanos unlocked it and took out a clear plastic bag which had in it a white powdery substance. Galanos gave the appellant $300.00.

Record at 171. This transaction was charged in Specification 3.

Testimony of Specialist Kinder and Investigator Galanos stands uncontested and uncontradicted. The appellant provided sworn testimony. First, testifying on a motion *in limine* about the chain of custody of LSD charged in Specification 1, he admitted that on 9 February 1988 he was in possession of two tabs of LSD and he gave one of the tabs to Specialist Kinder. Record at 32–36.

Second, the appellant elected to testify on the merits. He told the court that he had in his car two "hits" of LSD, one of which he gave to Specialist Kinder and the other to Investigator Galanos. Record at 221–223. Later, when Specialist Kinder asked him if he could get more drugs, appellant stated that he could.[1] The appellant also described in detail the arrangements for introducing Investigator Galanos to appellant's friends who could get cocaine for Galanos to purchase. Record at 233–237. When these plans went awry,[2] appellant paid $300.00 and bought the "eightball" of cocaine himself. Record at 238. Stewing mad during the ensuing weekend, appellant finally got in contact with Galanos so he could get back his $300.00. During cross-examination the appellant unequivocally admitted that at the time he gave LSD to Specialist Kinder and LSD and cocaine to Investigator Galanos, he knew it was illegal.[3]

We do not believe that the Court of Military Appeals intended to have its holdings of *United States v. Mance*, 26 M.J. 244 (C.M.A.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988) and *United States v. Brown*, 26 M.J. 266 (C.M.A.1988) apply in appellant's type of drug distribution case where the distribution was acknowledged as knowing and the defense is entrapment.

In *Mance*, the accused was tried for wrongful use of marijuana detected by urinalysis. The court painstakingly traced the legislative history and judicial precedents bearing on the elements of offenses for use and possession of controlled substances as currently proscribed by Article 112a, UCMJ. The court held that in order to convict in these two types of offenses, the military judge should instruct the members that:

(1) the accused must have known that he had custody of, or was ingesting the relevant substance, and

(2) the accused must have also known that the substance was of a contraband nature.

*Mance*, 26 M.J. at 254.

Finding that the matter of Mance's knowledge of the substance's presence and its contraband nature were, albeit indirectly, brought forth by the military judge for the members' consideration, the Court of Military Appeals tested for prejudice and held that the military judge's failure to specifically instruct on the two types of knowledge was harmless error.

In *Brown*, the accused was also tried for use of marijuana detected by urinalysis. Unlike *Mance*, the positive results of urinalysis were contested in *Brown*. Brown denied that he had ever consciously used marijuana. His testimony was corroborated by several other witnesses and by evidence of his good military character and

---

1. The appellant said: "... I really could, I have friends in Dallas. I mean, I wasn't talking about twenty sheets of acid, because you'd have to be a multimillionaire to buy it, but I have a friend who makes it, who would have easily sent me roughly about five sheets free." Record at 228.

2. Investigator Galanos did not show up at the planned rendezvous with the appellant.

3. The following is a colloquy between trial counsel and the appellant during cross-examination.

Q: But you had a friend in Dallas who was able to get drugs.
A: He makes it.
Q: He makes LSD. When you gave the LSD to Kinder you knew LSD was an illegal drug, certainly?
A: Yes, I did.
Q: And when you gave LSD to Galanos you knew it was an illegal drug.
A: Yes, I did.
Q: When you gave the cocaine to Galanos you also knew it was illegal?
A: Yes, I did.
Record at 256.

his character for truthfulness. The court affirmed the viability of its *Mance* precatory language for a need to instruct on an accused's (1) knowledge of the presence of the substance and his (2) knowledge of the contraband character of the substance involved. Since, however, the military judge did not touch upon any of the two aspects of the above-mentioned knowledge, the court declined to test for harmlessness.

In the instant case, differences in the type of offenses charged and the "confession and avoidance" type of defense used, make the *Mance* and *Brown* holdings of the Court of Military Appeals inapplicable. Here the military judge correctly instructed on what constitutes "distribution" and informed the members that in order to be an offense, such distribution must be "wrongful" and that it is wrongful if it is done without any legal justification or excuse. A *per se* application of the *Mance–Brown* instructional requirement to appellant's case would do nothing to promote fairness in the administration of military justice.

We have considered the other errors urged by the appellate defense counsel and by the appellant personally and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge GILLEY and Judge GIUNTINI concur.